[No. 2464]

## MARIE L. SUMMERFIELD, AND SARDIS SUMMERFIELD, AS HER HUSBAND, APPELLANTS, v. WALKER D. HINES, AS FORMER DIRECTOR-GENERAL OF RAILROADS, AND AS FEDERAL AGENT, RESPONDENT.

[197 Pac. 690]

1. CARRIERS—PLEADING HELD TO ALLEGE THAT A CARRIER'S RULE WAS IN FORCE AT TIME CONTRACT FOR TRANSPORTATION WAS MADE.

Construing the pleading with a view to substantial justice, as required by Civ. Prac. Act, sec. 123, an allegation that a particular rule of a carrier was in force in April will not, in an action for breach of contract in July for transportation as a passenger, be disregarded, but will be accepted as an allegation that the rule was in force at the time the contract was made.

2. PLEADING—SUFFICIENCY OF COMPLAINT DETERMINED FROM FACTS ALLEGED, AND NOT CONCLUSION OF PLEADER.

In determining the sufficiency of a complaint as against demurrer, the facts alleged, and not the conclusions of the pleader, govern.

3. CARRIERS—"TICKET" NOT A CONTRACT, BUT NATURE OF RECEIPT LIMITED AND REGULATED BY CARRIER'S RULES.

A railroad ticket is not a contract expressing the conditions and limitations usually in a written agreement, but is more in the nature of a receipt for fare and is limited and regulated by the carrier's rules.

4. EVIDENCE—COURTS WILL TAKE JUDICIAL NOTICE OF LOCATION OF CITIES.

The courts will take judicial notice that Reno and San Francisco are points west of Ogden for the purpose of interpreting a transcontinental carrier's rules.

5. CARRIERS—COMPLAINT BY PASSENGER DENIED TRANSPORTATION HELD NOT TO STATE CAUSE OF ACTION; "LOCAL TICKET."

In an action by plaintiff who held ticket from Reno to San Francisco, but who was denied admission to a limited train, the complaint, setting forth the rules of the carrier and the circumstances and seeking recovery on the ground of breach of contract, held not to state cause of action, the rules of the company pleaded declaring a ticket for such transportation to be a local ticket, notwithstanding "local ticket" is ordinarily defined in relation to railroads as traffic confined to a single road, and such rules further requiring a local passenger to hold either a sleeping-car ticket or a permit showing that a through passenger would share such accommodations, and the complaint not alleging plaintiff had the required ticket or such a permit.

6. APPEAL AND ERROR—APPELLANT WHO RELIED ON RAILROAD RULES CANNOT ON APPEAL CONTEND THAT THEY WERE UNREASONABLE. On appeal from a final order sustaining a demurrer to the complaint of one who was denied admission to a limited train, though she held ticket, the rules of the carrier which were set out cannot for the first time be attacked as unreasonable.

APPEAL from Second Judicial District Court, Washoe County; *Edward F. Lunsford,* Judge.

Action by Marie L. Summerfield and Sardis Summerfield, as her husband, against Walker D. Hines, as former Director-General of Railroads and as Federal Agent. From an order sustaining a demurrer to the complaint, plaintiffs appeal. **Affirmed.**

*Sardis Summerfield,* for Appellants:

The following common-law principle has been long firmly established: "A common carrier of passengers for hire may not, by rule or otherwise, refuse to carry passengers who are not physically or mentally disqualified, and who tender full legal payment for carriage, upon any regular passenger train by it operated from one regular station to another regular stopping station, if it has suitable room and accommodations so to do. As a corollary to this rule of law may be added the one that when there is continuing considerable demand for such carriage it is the duty of the common carrier to provide sufficient additional facilities to meet such demand." Pearson v. Duane, 18 L. Ed. 447; Tarbell v. C. P. Co., 34 Cal. 616; Toledo R. Co. v. Pence, 68 Ill. 524; Richmond v. S. P. Co., 67 Pac. 949; T. & H. Co. v. Simon, 25 Pac. 148; Georgia v. Lippman, 110 Ga. 665; Elmore v. Sands, 54 N. Y. 512; Bennett v. Dutton, 10 N. H. 421; Day v. Owen, 5 Mich. 520; Bennett v. Peninsular Co., 6 C. B. 775; Hawcroft v. Great N. Co., 8 Eng. L. & Eq. 362.

"A common carrier of passengers is one who undertakes for hire to carry all persons indifferently, who apply for passage." Thompson C. of P. 26.

It matters not that this is a common-law action. In

its trial appellants are entitled to all benefits arising as incidents of the trial that can be derived from federal legislation. McElwain v. St. Louis Co., 131 S. W. 745; Pittsburg Ry. Co. v. Mitchell, 91 N. E. 735; St. Louis Co. v. Heyser, 130 S. W. 564.

Congress has by various enactments fortified the common law against discriminatory practice by common carriers. 3 Fed. Stats. Ann. 816.

The only excuse that can be offered by the operators of the train for their unlawful outlawry are the regulations pleaded in the amended complaint. These are plainly unreasonable and capricious, and without legal force and effect. They are in violation of federal law. 6 Fed. Stats. Ann. 730. A rule of a common carrier in violation of law is unenforceable. Robinson v. S. P. Co., 105 Cal. 526; Decuir v. Benson, 27 La. Ann. 1; 6 Cyc. 546. Rules of common carriers of passengers for hire, to be legally effective, must be reasonable. South Fla. Co. v. Rhodes, 25 Fla. 40; Memphis Co. v. Benson, 85 Tenn. 627; Day v. Owen, 5 Mich. 520; Baltimore Co. v. Carr, 71 Md. 135; 6 Cyc. 546.

So far as the rights of passengers and the liabilities of common carriers are concerned, there is no appreciable difference between wrongfully refusing admittance to an intending passenger and wrongfully ejecting a passenger. Cleveland Ry. Co. v. Kinsley, 60 N. E. 169; Northern Ry. Co. v. O'Connor, 76 Md. 207; Baltimore Ry. Co. v. Carr, 71 Md. 135; Dickerman v. St. Paul Co., 44 Minn. 433; 6 Cyc. 581; 10 C. J. 648.

The relation of carrier and passenger commences when a person, with the intention of becoming a passenger, places himself in a situation to avail himself of the facilities for transportation which the carrier offers; and in the case of a railroad carrier this relation arises not merely when the passenger enters the train with the ticket already purchased, giving him a contract to ride, but when he enters upon the premises of the carrier with the intention of taking a train in due course.

Chicago Co. v. Jennings, 89 Ill. App. 335; Illinois Co. v. Treat, 75 Ill. App. 327; Jeffersonville Co. v. Riley, 39 Ind. 568; Kansas City Co. v. Barth, 142 Mo. 535; Choate v. Missouri Co., 67 Mo. App. 105; Exton v. Central Co., 63 N. J. L. 356.

An aggrieved passenger may recover damages without direct proof of the humiliation suffered by him because of wrongful action by the carrier. Forrester v. S. P. Co., 36 Nev. 290; Chicago Co. v. Chesholm, 79 Ill. 584.

·The ticket in question was not a "local" ticket. The distance by rail from Reno to San Francisco is two hundred and forty miles. Respondent has never classified its tickets for the trip as local tickets. A ticket from one region to another so widely removed, and so materially different in every prominent feature, cannot be considered as a local ticket without ascribing to language a meaning at variance with common understanding and disregarding every authority on philology. "Local," Century Dictionary.

*Brown & Belford,* for Respondent:

The order sustaining the demurrer to the first cause of action should be sustained. The facts stated do not show that plaintiff was entitled to become a passenger on the train in question. The ticket does not constitute a contract of transportation, but is merely evidence of the right to transportation, if such exists. A ticket from Reno to San Francisco is a "local ticket." Through tickets are those which are sold for through traffic, which is that originating upon the line of one railroad and terminating on that of another. Schneider v. Evans, 25 Wis. 241; Lumb v. Canden, 46 N. Y. 271. Through tickets are those for a continuous transportation over more than one line of road. McCollum v. S. P. Co., 88 Pac. 663; Knight v. Portland Ry. Co., 56 Me. 240; 4 Elliott, Railroads, sec. 1596.

"There is no presumption that a mere ticket, without

a further showing, would entitle the holder to ride on all trains run by the appellant." McCollum v. S. P. Co., supra.

Defendant had the right to make rules and regulations excluding local passengers from transportation on limited trains. This right has been recognized in interstate commerce. Johnson v. A. T. & S. F. R. Co., 38 I. C. C. 294. Carriers may operate limited trains and confine their use to through passengers. S. P. Co. v. McNab, 169 S. W. 757; Campbell v. Milwaukee Co., 170 N. W. 937; Ames v. S. P. Co., 75 Pac. 310; Ohage v. N. P. Ry. Co., 200 Fed. 128.

If the rules and regulations with respect to the kind of tickets honored on the train in question are claimed to be discriminatory against persons or localities, application must be made to the Interstate Commerce Commission to determine whether or not the discrimination is of the character forbidden by the Interstate Commerce Act. Mitchell C. &. C. Co. v. P. R. Co., 230 U. S. 244; Texas & P. R. Co. v. Abilene C. O. Co., 204 U. S. 426; B. & O. R. Co. v. U. S., 215 U. S. 481; Robinson v. B. & O. R. Co., 222 U. S. 506; Pa. R. R. Co. v. Puritan C. Co., 237 U. S. 121; Pa. R. R. Co. v. Clark, 238 U. S. 456, 59 L. Ed. 1406.

By the Court, DUCKER, J.:

This appeal is taken from the order of the lower court sustaining respondent's demurrer to the first cause of action set out in the amended complaint. The demurrer to the second cause of action was overruled by the court, and it was stipulated by counsel that the order sustaining the demurrer to the first cause of action be made a final order. It was further stipulated that respondent's time for answering be extended until ten days after the remittitur from the supreme court was filed in the lower court. We are therefore concerned only with the question raised by the demurrer to the first cause of action. The ground of the demurrer is that said first cause of

action does not state facts sufficient to constitute a cause of action.

In the amended complaint, after stating facts to show that the respondent is a proper necessary party, it is alleged as follows:

"Paragraph IV. That at and during all of the time from January 1, 1919, to March 1, 1920, defendant was a common carrier of passengers for hire, and as such common carrier operated all of that certain line of railroad extending from Ogden, Utah, to Oakland pier at Oakland, Cal., and in connection therewith and as a part thereof a certain ferryboat service from said Oakland pier to San Francisco, Cal., and all of the motive power, rolling stock, equipment, and instrumentalities thereof and in whole constituting what was commonly known as the Central Pacific Railroad, and previous to the said period of time operated by the Southern Pacific Company, a corporation.

"V. That on the 15th day of July, 1919, defendant did, and for a long time next prior thereto had, and ever since has, as an interstate carrier of passengers for hire, controlled and operated on said line of railroad a daily west-bound passenger train from Ogden, Utah, to Oakland pier at Oakland, California, and known as train No. 1, and also as the 'Overland Limited,' and that said passenger train had at said date regularly scheduled stopping stations between Ogden, Utah, and Oakland pier at Oakland, California, as follows, to wit: Montello, November [Nevada]; Wells, Nevada; Elko, Nevada; Carlin, Nevada; Winnemucca, Nevada; Imlay, Nevada; Lovelock, Nevada; Hazen, Nevada; Reno, Nevada; Truckee, California; Blue Canyon, California; Colfax, California; Sacramento, California; Port Costa, California; Berkeley, California; Oakland at Sixteenth Street station, California; and at Alameda at Park Street station, California; and from said Oakland pier by said ferryboat service owned and operated by defendant as a part of said line of railroad to San Francisco, California.

"VI. That on the said 15th day of July, 1919, defendant did, and for a long time next prior thereto had, widely and generally published and circulated for the authentic use and information of his prospective passengers upon said daily train its 'time-table' folder containing under the subhead title, 'Ogden Route Train 2— Overland Limited—Train 1,' the following information to its contemplated passengers:

" '*Transportation Honored* — Only passage tickets good in sleeping cars in connection with sleeping-car tickets; all tickets, including employees' tickets at half or higher fare stamped "Railroad Employee"; annual passes issued to railroad officers and employees other than Southern Pacific R. R. (Pacific System); annual passes issued to general officers of Southern Pacific (Pacific System) or their families; annual passes, form "Z"; trip passes, form "Y"; annual trip passes, form "G. G."

" '*Transportation Not Honored* — Tickets indorsed "Employee" sold at less than half fare; tickets indorsed "Charity"; caretakers' or drovers' tickets; soldiers' or sailors' tickets indorsed "Furlough"; tickets indorsed "discharged Sailor, Soldier, Marine, Nurse"; tickets indorsed "Not good on any limited train"; annual passes issued to employees Southern Pacific (Pacific System); local and local interline tickets for daylight ride between any two points west of Ogden.'

"VII. That on March 29, 1919, defendant caused to be issued, published, and circulated, effective April 1, 1919, his official circular No. 3025, containing the following rule:

" '*Trains, Transportation Not Honored*—Nos. 1 and 2 Overland Limited * * * tickets:

" 'Local tickets between any two points west of Hazen, except that tickets from Reno and Truckee to Berkeley, Oakland, San Francisco, and beyond will be honored on train No. 1. (See note on page 2.)

" '*Note* — Local Passengers Accompanying through

Passengers. Provided a passenger holding necessary through tickets and Pullman tickets desires to be accompanied for a portion of the journey by one or more persons, who will share the Pullman space purchased by the through passenger for his own use, an exception to the rules may be made subject to the following conditions:

" '(a) If the through passenger has purchased a berth he may be accompanied without extra Pullman charge by one local passenger only.

" 'If the through passenger has purchased an entire section or a compartment, he may be accompanied without extra Pullman charge by not to exceed three local passengers.

" 'If he has purchased a drawing-room, he may be accompanied without extra Pullman charge by not to exceed four local passengers. ,

" 'Local passengers accompanying through passengers in excess of these limitations must pay seat fare between points they travel.

" '(b) The accompanying passengers in all cases should hold regular first-class passage tickets good for use in sleeping- or parlor-car and permits from passenger-traffic manager or other proper official authorizing conductors to permit them to board the train.'

"VIII. That on July 15, 1919, plaintiff Marie L. Summerfield purchased from defendant, for the sum of $9.23 to him then paid, her right of transportation of herself and her baggage upon said train No. 1, also known as the 'Overland Limited,' from Reno, Nevada, to San Francisco, California, and then received from defendant as an evidence of her said right of transportation a certain first-class, unlimited through ticket, which said ticket, as plaintiffs are informed and believe, and upon such information and belief allege, is now in the possession of the defendant, and that said ticket by its express terms did not, and does not, exclude said plaintiff from her right of transportation upon said

train, but upon the contrary did and does include her as having a right of transportation upon said train. .

"IX. That upon section 1 of said train No. 1, also known as the 'Overland Limited,' at Reno, Nevada, on said July 15, 1919, a certain passenger thereon, then having a through ticket and Pullman ticket for an entire section on said train, which said section was unoccupied and unreserved except for himself, to wit, Henry C. Thurtell, who was an old-time friend and acquaintance of plaintiff Marie L. Summerfield, prior to the departure of said train offered to said plaintiff to share said section with her, and desired her to accompany him in said section, and invited her to do so, and that she then and there accepted said offer and invitation.

"X. That with such ticket in her possession and prepared to pay defendant any further additional legal charges as might be demanded from her by defendant, she did on the morning of July 15, 1919, at Reno, Nevada, request from defendant and his managing representative admittance and transportation from Reno, Nevada, to San Francisco, Cal., upon section 1 of said passenger train No. 1, Overland Limited, at the same time exhibiting to said managing representative of defendant said ticket and offering to pay any further charges for such transportation, if any should be required, notwithstanding said offer and said invitation of said Henry C. Thurtell, but was by defendant then wrongfully refused admittance to or upon said section 1 of said train.

"XI. That by reason of said wrongful refusal of defendant to admit said plaintiff Marie L. Summerfield to and upon said train she suffered keen and long-continued mental humiliation and distress, and that plaintiffs have been damaged thereby in the sum of $1,000, all of which said sum remains due and unpaid from defendant to plaintiffs."

It is clear from an examination of the foregoing pleading that the action which appellants seeks to maintain is an action for damages for the breach of a contract.

The question for determination developed by the general demurrer is: Do the facts alleged show that a contract was entered into between Marie L. Summerfield and respondent by virtue of which the latter engaged on the morning of July 15, 1919, to transport her from Reno to San Francisco on train No. 1, and was she wrongfully refused admittance to said train by respondent's agent?

1. For convenience, Marie L. Summerfield will hereafter be designated as appellant. Preliminarily we will dispose of the objection made by counsel for respondent to a consideration of the rule pleaded in paragraph VIII. It is alleged as effective April 1, 1919, and inasmuch as it is not alleged to have been in effect on July 15, 1919, when the contract was made, it is insisted that it has no place in the pleading and should be disregarded. A more liberal view appears to us to be in accord with the purpose of the statutes relating to the construction of pleadings. In construing a pleading for the purpose of determining its effect, its allegations should be construed with a view to substantial justice between the parties. Section 123, Civil Practice Act (Rev. Laws, 5065). The rule is shown to have been in effect a short time before July 15, and whether actually in effect then is a matter exclusively within the knowledge of respondent. The allegation could therefore in no wise mislead respondent or affect a substantial right, and should be deemed sufficient.

2-5. Returning to consider the main question presented, it will be observed that there is alleged in paragraph VIII a contract to carry appellant and her baggage on train No. 1 from Reno to San Francisco, and the issuance to her of a first-class, unlimited through ticket as evidence of her right of transportation upon said train, which ticket by its express terms included her as having such right of transportation. The pleader has gone further and alleged facts in paragraphs VI and VII which obviously must be taken into consideration in determining what right of transportation arose from

the contract. The contract made by the parties must be determined from the facts alleged, and not from the conclusion of the pleader. Paragraph VI sets out a certain time-table folder designated for the authentic use and information of prospective patrons of the road, and alleges that on July 15, 1919, and prior thereto it was widely and generally published and circulated by respondent. From this time-table folder it appears that only passage tickets good in sleeping-cars in connection with sleeping-car tickets were honored on train No. 1, and that local and local interline tickets for daylight rides between any two points west of Ogden would not be honored.

In paragraph VII is pleaded a certain circular issued, published, and circulated by respondent, containing a certain rule in regard to transportation on train No. 1. Appearing in the rule under the head of "Transportation Not Honored" are local tickets between any two points west of Hazen. Tickets from Reno and Truckee to Berkeley, Oakland, San Francisco, and beyond are excepted from the operation from the rule, and reference is made to note on page 2. It is contended that the time-table folder and circular are not pleaded as rules and regulations of the respondent, but they cannot be given any other effect. They appertain to the regulation of transportation on respondent's Overland Limited train, are shown to have been issued, published, and circulated by respondent, and have been made in part the basis of appellant's cause of action. No other purpose is apparent for pleading them than as the rules of respondent, and to show that the appellant, by reason of the ticket purchased by her, was one entitled under such rules to transportation on train No. 1. It is alleged that the ticket on its face gave her that right. This is only the conclusion of the pleader. As said in Ames v. Southern Pacific Co., 141 Cal. 728, 75 Pac. 310, 99 Am. St. Rep. 98:

"A railroad ticket is not a contract expressing all the

conditions and limitations usually contained in a written agreement. * * * It is more in the nature of a receipt given by the railroad company as evidence that the passenger has paid his fare for a certain kind of passage on the proper trains of the company, as limited and regulated by its rules."

The authorities cited in this decision are to the same effect. Dietrich v. Pennsylvania R. R. Co., 71 Pa. 436, 10 Am. Rep. 711; Lake Shore Ry. Co. v. Rosenzweig, 113 Pa. 536, 6 Atl. 545.

"A ticket seldom expresses all the conditions of the contract between the carrier and passenger." Ames v. S. P. Co., supra.

It is nowhere alleged that the respondent's agent violated the rules in selling her a ticket good for carriage on train No. 1. On the contrary, as we have previously stated, the rules are relied upon in the pleading as furnishing that right because of the ticket. The allegation in paragraph VIII that respondent contracted to transport her on train No. 1 must be considered in connection with the rules.

Assuming that appellant's ticket was otherwise good in sleeping-cars, it is nowhere alleged that she had a sleeping-car ticket in accordance with the requirement in the time-table folder. By the folder it also appears that local tickets for daylight rides between any two points west of Ogden could not be honored on train No. 1. We may take judicial notice of the fact that Reno and San Francisco are two points west of Ogden. Counsel's contention that San Francisco cannot be considered a point west of Ogden because it is the terminus of the line is extremely technical, and his contention that the ride on train No. 1 is not a daylight ride because the train runs through about 40 miles of snowsheds in running a distance of 243 miles is of the same unsubstantial character. He contends also that a ticket from Reno to San Francisco is not a local ticket for the reason that the word "local," taken in its popular meaning when

applied to a railroad ticket, must necessarily mean a ticket between certain intermediate points. But the rule pleaded in paragraph VII declares a ticket between Reno and San Francisco to be a local ticket. The rule furnished its own definition of the term "local ticket." And in the particular instance of this rule the word "local" as applied to a ticket between Reno and San Francisco is not employed beyond its well-understood meaning in railroad parlance. Webster's New International Dictionary defines "local ticket" in relation to railroads as traffic confined to a single road.

In the rule pleaded in paragraph VII tickets from Reno and Truckee to Berkeley, Oakland, San Francisco, and beyond are excepted from its general operation, that local tickets between any two points west of Hazen will not be honored on train No. 1. But to this exception are attached the conditions appearing in note 1, page 2. The rule refers to this note and it is apparent from the fact that the reference immediately follows the clause making the exception that it was intended to attach the condition contained in the note to tickets from Reno and Truckee. Again, as pertinently inquired by the learned trial court, if this were not the clear intent of the rule, why any reference to the note on page 2?

In paragraph IX appellant alleges compliance with the first condition, namely, an invitation from a certain passenger on the train having a through ticket and an entire section in a Pullman car to share such section, but fails to allege compliance with the second condition, requiring a regular first-class ticket good for use in sleeping- or parlor-car and a permit from the passenger-traffic manager or other proper official authorizing the conductor to permit her to board the train. Under this rule, then, the conductor, in the absence of a permit, was required to refuse appellant admission to the train. For this reason alone the allegations in the pleading that the section held by the through passenger was

unoccupied and unreserved except by himself, and that appellant was prepared to pay and did offer to pay any further legal charges for her transportation, cannot aid the pleading. The conductor was bound to enforce the rules of respondent appertaining to his duties. We conclude that the facts alleged are insufficient to show a contract to transport appellant upon train No. 1.

6. Counsel for appellant contends that the rules are unreasonable and discriminatory, and therefore unenforceable, and has cited a great deal of authority on this point. From the written decision of the trial court which appears in the record, we infer that the question of the unreasonable and discriminatory character of the rules pleaded is raised here for the first time, as no reference is made to it in such decision. But, be that as it may, however sound this contention may be, as a matter of law it cannot be applied in testing the sufficiency of appellant's cause of action. The question presented is strictly one of pleading. As we have shown, the reasonable rules and regulations appertaining to a contract of transportation on a common carrier form a part of the contract. The rules in this case are not alleged to be unreasonable or discriminatory, but, on the contrary, as we construe the pleading, are alleged to show that under them respondent violated its contract with appellant. Having thus pleaded them, she is bound by them so far as the pleading is concerned. We are aware of no rule of pleading which permits a party to disavow allegations essential to a cause of action in order to sustain it.

The order of the trial court sustaining the demurrer to appellant's first cause of action is affirmed.