JOSEPH S. DURAN AND MAXINE DURAN, APPELLANTS, v. EDWARD A. MUELLER, RESPONDENT.

No. 4557

November 13, 1963                      386 P.2d 733

*Gregory & Gregory,* of Las Vegas, for Appellants.

*Morse & Graves,* of Las Vegas, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

Maxine Duran and husband sought to recover damages from Mueller resulting from an automobile collision. The accident occurred near Henderson, Nevada on the Las Vegas-Boulder City four lane divided highway. Maxine Duran contended that she was proceeding generally towards Boulder City in the left lane of the two lanes provided for traffic going in that direction.

As she arrived at an intersection she started to turn left (to cross over onto the highway for Las Vegas bound traffic) when her car was negligently struck from the rear by Mueller's car. Mueller's factual defense was that he had been following Duran in the right lane of traffic and had moved over to the left lane to pass when she abruptly turned left in front of him without warning, causing the collision to occur. The jury apparently accepted Mueller's version of the accident and returned a verdict in his favor. Judgment was entered. The plaintiffs appeal. Seventeen claimed errors are presented to us. Two of them (one relating to certain medical testimony and the other concerning the trial court's refusal to give a punitive damage instruction) need not be discussed. They are not relevant to the issue of liability and, manifestly, had nothing to do with the verdict reached. We turn to discuss the remaining 15 assigned errors.

1. *Evidence rulings.*

(a) On redirect examination of Maxine Duran she was asked: "Now, how were you sure you were in the left lane, Mrs. Duran?" The court believed the question to be leading and sustained defense counsel's objection. When Mrs. Duran testified on direct examination the same question was put to her and answered. Thus the validity of the court's ruling when the question was again asked clearly cannot form a predicate for error.

(b) Davis, a disinterested eye witness to the accident, was called by the plaintiff during presentation of her case in chief and testified as to what he heard and observed. To impeach him, the defendant during the presentation of his case asked the investigating police officer to relate what Davis had told him following the accident. Plaintiffs' counsel objected, asserting that a foundation (time, place, who was present) for impeaching testimony had not been established through the testimony of Davis when he was on the stand; that

Davis had not been asked whether he had conversed with the investigating officer. The objection was overruled. Though it is preferable to require the foundation, cf. State v. Kuhl, 42 Nev. 185, 175 P. 190, 3 A.L.R. 1694, its absence doesn't necessarily result in prejudice. Here, however, the officer's testimony did not impeach Davis. He testified "The witness (Davis) stated that he had heard the screech of brakes and turned around and saw the collision." Such testimony (so far as it goes) is consistent with the prior testimony of Davis. Therefore it is apparent that the court's ruling on the objection could not have affected the trial result.

(c) The investigating officer was asked "how the automobiles collided." The objection of no foundation was made by plaintiffs' counsel, and overruled. Defense counsel told the witness not to testify as to the cause of the accident. The witness related the position of the cars as they came together. He was not qualified as an expert. However, as the investigating officer, he had already testified to the skid marks, point of impact, apparent car direction, and car damage. In such circumstances a nonexpert witness may also indicate the position of the cars as they collided. The fact that such testimony is a deduction or an opinion does not preclude it. McPherson v. Martin, 234 Ala. 244, 174 So. 791. It does not constitute an opinion as to cause or responsibility. Cf. Mikulich v. Carner, 69 Nev. 50, 240 P.2d 873; Annot., 38 A.L.R.2d 13. Rather, the admissibility of such opinion testimony is somewhat comparable to the reception of nonexpert opinion evidence as to the rate of speed of a moving vehicle. Patton v. Henrikson, 79 Nev. 197, 380 P.2d 916. In either instance the competency of the witness must first be shown. Here the prior testimony regarding skid marks, point of impact, car direction, etc., was a proper foundation for his opinion, whereas in Patton v. Henrikson, supra, the competency requirement was met by proof that the witness had ample opportunity to observe the moving car. The trial court ruled correctly.

## 2. *Jury instructions.*

(a) First we comment regarding counsel's complaint that he was not given a fair opportunity to make a complete record of objections to instructions given and proposed instructions refused. As to those which were given the record does not support him. He objected specifically to some of them. As to those which he had offered, but were refused, the following colloquy occurred:

"By the Court: Well, I think you might protect yourself better if you make an objection to the refusal to give all the instructions you have submitted.

"By Mr. Gregory, Sr.: Well, I did.

"By the Court: All of them, not specifically one or two, but all of them.

"By Mr. Gregory, Sr.: Yes, Your Honor, on the ground that each of them correctly states the law and there is evidence pertaining to each of them in this case."

In making a record for the contingency of appellate review it is preferable that each instruction be discussed separately and counsel's position made clear. The court should not have invited counsel to make a blanket objection to refused instructions, nor should counsel have accepted the invitation. It is his obligation to protect the record in proper fashion. However, as the procedure was adopted at the court's suggestion, we will consider the refused instructions, even though the objection made was general and vague.

(b) *Given instructions.* The trial court gave an instruction defining unavoidable accident. Appellants contend that it was reversible error to do so. Butigan v. Yellow Cab Company, 49 Cal.2d 652, 320 P.2d 500; cases collected Annot., 65 A.L.R.2d 12. Counsel did not preserve the point for appellate review. He did not object. NRCP 51. Therefore we decline to rule. Lathrop v. Smith, 71 Nev. 274, 288 P.2d 212; Wagon Wheel v. Mavrogan, 78 Nev. 126, 369 P.2d 688.

It is also urged that reversible error occurred when the trial court instructed the jury that the highway

department could prescribe speed zones, post speed signs and, if a party exceeded the posted speed, the jury could consider such fact in deciding the issue of negligence. The instruction appears to be based on NRS 484.090.[1] The record is devoid of proof that the department of highways designated the speed zone within which the accident occurred, or that it installed the speed signs. We cannot assume these facts. We take judicial notice of the fact that the accident occurred within the incorporated area of the city of Henderson. Cf. Summerfield v. Hines, 45 Nev. 60, 197 P. 690. Perhaps the speed zone was prescribed by the city, Clark County, or the department of highways. We do not know. Absent proof that the actions contemplated by NRS 484.090 occurred, the instruction finds no support in the record.[2] Though it was erroneously given, the error cannot be deemed prejudicial. Its presence was beneficial to the plaintiffs-appellants, rather than harmful. The matter of speed was directed to the defendant Mueller's conduct. No one contended that Mrs. Duran exceeded a posted speed limit.

(c) *Refused instruction.* Three instructions offered by plaintiffs (one quoting NRS 484.090 and the others dealing with the effect of violating a standard of conduct *established by the statute*) were refused by the court. It correctly did so. The instruction quoting NRS 484.090

---

[1]NRS 484.090 reads: "Establishment of state speed zones. 1. The department of highways is authorized to prescribe speed zones, and to install appropriate speed signs controlling vehicular traffic on the state highway system through hazardous areas, after necessary studies have been made to determine the need therefor, and to eliminate speed zones and remove the signs therefrom whenever the need therefor ceases to exist.

"2. After the establishment of a speed zone and the installation of appropriate speed control signs, any person who drives a motor vehicle upon the public highway and in such speed zone in excess of the speed therein authorized shall be guilty of a misdemeanor."

[2]Had such proof been supplied, the issue as to whether a violation of a speed limit established by an administrative body (as distinguished from the violation of a speed limit expressed in a statute) is negligence per se or only evidence of negligence would have been presented. In this regard, an article entitled "The Role of Administrative Safety Measures in Negligence Actions," 28 Tex.L.Rev. 143, is of interest.

was improper for the reasons already stated. The others should not have been given because the statute did not establish either a speed zone or a speed limit. The authority to do so was delegated to the highway department, and we do not know whether that authority was exercised.

Finally, it is urged that the trial court committed three additional errors in refusing instructions requested by the plaintiffs Duran. One of them was based on NRS 484.105 (2) to the effect that it is lawful to drive on the left, or inside, lane of a four lane divided highway under certain circumstances. Another advised as to when the "defense of an unavoidable accident" cannot be maintained. It seems to us that neither instruction was necessary. Perhaps each could have been given without committing error. However, it does not follow that failure to give them was error.

As a general proposition the number of instructions to be given is discretionary with the court. If one instruction adequately covers a given theory of liability or defense, it is preferable that the court refuse additional instructions relating to the same theory, though couched in different language. Here the issues to be tried were the defendant's negligence, the plaintiff's contributory negligence, causation and, of course, damages if liability was found to exist. The jury was properly instructed on those issues. The two instructions just mentioned were merely embellishments which the court could properly refuse.

A last clear chance instruction was offered by the plaintiffs and refused by the court. We have searched the record with care. There is no evidence to justify the giving of a last clear chance instruction. The plaintiff Maxine Duran did not observe the defendant's driving. Her story was that she was struck from behind. The witness Davis heard the screech of brakes, turned around, and saw the collision. He did not testify as to distance between the cars preceding the collision, or the time available for the defendant to act. The defendant

Mueller testified that Duran turned in front of him abruptly and without warning, and that he had no time to do anything except apply his brakes. No other witness saw the collision. Obviously such evidence does not show a last clear chance to avoid the accident. The trial court did not err. Cordano v. Pac. Intermtn. Exp., 74 Nev. 119, 324 P.2d 232; Ferris v. Albright's Electric Co., 70 Nev. 528, 275 P.2d 755.

3. The remaining assignments of error attack the trial judge. It is claimed that he improperly interrupted the jury summation of plaintiffs' counsel and that he manifested a hostile attitude towards the plaintiffs and their counsel throughout the trial. The attack is totally unwarranted. The judge did not interrupt counsel during summation. Defense counsel did by interposing objections upon which the court ruled. Nor does the record reflect court hostility to the plaintiffs' side of the case. Advocacy sometimes distorts counsel's ability to perceive and discriminate; it did here.

Affirmed.

BADT, C. J., and McNAMEE, J., concur.