SOUTHERN PACIFIC COMPANY, a CORPORATION, KENNETH K. KNUDSON, AND EARL ASWE-GAN, APPELLANTS, v. ELEANOR JEAN HARRIS, RESPONDENT.

No. 4748

October 13, 1964                    395 P.2d 767

[Rehearing denied November 6, 1964]

*Woodburn, Forman, Wedge, Blakey, Folsom and Hug,* of Reno, for Appellants.

*Murray V. Dolan,* of Sparks, for Respondent.

# OPINION

By the Court, THOMPSON, J.:

During the evening of January 8, 1963, a railroad crossing accident occurred at the intersection of the Southern Pacific tracks and Seventeenth Street in Sparks, Nevada. A car driven by the plaintiff Harris collided with a diesel engine unit operated by the defendant Southern Pacific Company. The plaintiff sustained personal injuries and property damage. She claims that the collision was proximately caused by the negligence and wanton misconduct of the defendant Southern Pacific Company and its employees and codefendants Knudson, the engineer, and Aswegan, the fireman. The defendants denied her charges of negligence and wanton misconduct. In addition, they asserted the contributory negligence of the plaintiff as a defense to the charge of negligence. After the evidence was received the court instructed the jury on the law and then submitted the case to it for decision. Included

among the instructions given were instructions about last clear chance, wanton misconduct and punitive damages. The jury favored the plaintiff with its verdict, awarding $10,000 compensatory and $25,000 punitive damages against all defendants. Judgment was entered accordingly. This appeal followed. We reverse and remand for a new trial primarily because the lower court erroneously permitted the jury to consider evidence which fatally infected the fairness of the trial. However, we deem other assigned errors to have merit and will discuss them in order to preclude their recurrence should the cause be tried again.

The collision happened at night. The weather was clear and the road dry. Four sets of railroad tracks running in an east-west direction intersect with Seventeenth Street which runs in a north-south direction. The intersection is within the Southern Pacific yard. After entering the yard from the east the diesel engine unit was cut loose from the train it had been pulling. It proceeded westerly across the intersection to a "cross-over" approximately 288 feet west of Seventeenth Street where it "crossed-over" to the northernmost track and commenced backing in an easterly direction toward the Seventeenth Street intersection. The positive, affirmative testimony was that the rear headlights of the engine were on, the bell was rung, and the whistle (two longs, a short, and a long) was blown. The engine proceeded easterly at a speed of about eight miles per hour. Meanwhile the plaintiff approached the intersection from the south, driving her car north on Seventeenth Street. She had traversed the intersection many times before. She observed the flashing amber light over the southern entrance to the intersection which served to further warn of the existence of the railroad crossing. She stopped before proceeding across the tracks. Her vision to the east and west was not obstructed. No car was approaching or crossing the intersection from the opposite side of the tracks. She did not see the diesel engine, nor did she hear the whistle. She did hear the bells just before impact. The fireman first saw the car as it was entering on the

tracks. At that moment the engine was estimated to be about 30 feet from the spot where the collision happened. He shouted a warning and the engineer applied the emergency brake. An expert testified that the minimum stopping distance for the engine at the speed of eight miles per hour would be 37 feet from the time the brake valve handle was placed in emergency position.

The evidence does not show that the intersection was inadequately illuminated, nor for any deducible reason inherently dangerous to vehicular traffic on Seventeenth Street; to the contrary, the crossing was in good repair. The mercury vapor lights illuminating the crossing were in accordance with the design of the Sierra Pacific Power Company and, by actual test, met the national lighting standards for crossings. The lighting more than complied with the requirements of the applicable Sparks city ordinance and was approved by the city engineer. Indeed the plaintiff does not contend that the Southern Pacific Company maintained the crossing in violation of any statutory or ordinance requirements. With this story of the collision in mind we turn to discuss the prejudicial evidence which was received over vehement objection.

1. *Prior accidents at the same crossing.* During presentation of the plaintiff's case in chief, six police officers of the city of Sparks were called as witnesses. Each was permitted to testify to the fact that he had investigated one or more accidents (one of them had investigated five accidents) which had occurred at the Seventeenth Street crossing at various times before January 8, 1963 (the date of the collision here involved). It was the theory of plaintiff at trial and in this court that the mere occurrence of many prior accidents at the same crossing, without more, tends to show that the crossing was inherently dangerous and, further, that the Southern Pacific Company was placed "on notice" to do something about it. We are referred to the annotation at 70 A.L.R.2d 167 entitled, "Admissibility, on the issue of the defendant's negligence in respect of condition of place where plaintiff was injured, of evidence of prior accidents or injuries at same place."

Most of the cases there collected do not support the contention of plaintiff-respondent.

Though it is true that there exist exceptions to the general rule precluding evidence of prior accidents at the same place, none of them touches the case before us. Here the accident involved two moving objects, a car and a diesel engine, each operated by a person. The collision unquestionably was proximately caused by the failure of one or both of the operators to exercise ordinary care under the circumstances. There is no evidence to indicate that the physical condition of the crossing itself was either the proximate or a concurring cause of the collision. [Cf. Powell v. N.C.&O. Railway, 28 Nev. 40, 78 P. 978, where the railroad company had a steam whistle on its shops six feet from the line of the street along which the plaintiff was driving. The plaintiff's horse took fright at the sounding of the whistle and ran away, injuring the plaintiff. In that case the court permitted a witness to testify that, on another occasion, the company's whistle had frightened a team of horses and caused it to run away. The evidence was allowed "to show the dangerous character of the whistle at the place it was used" and was directly relevant to the issue of causation. See also Longabaugh v. The Virginia & Truckee R.R. Co., 9 Nev. 271.] Indeed most of the cases permitting evidence of prior accidents at the same place involve a specific physical condition, usually permanent or continuing in character (Cf. El Dorado Club, Inc. v. Graff, 78 Nev. 507, 377 P.2d 174), which is claimed to have caused not only the accident in issue but the prior accidents as well. The case before us is not such a case. The following authorities are among many that support our view: Lowry v. Seaboard Airline R. Co., 171 F.2d 625; Bledsoe v. Missouri, K.&T.R. Co., 149 Kan. 741, 90 P.2d 9; Johnson v. Maine Central R. Co., 141 Me. 38, 38 A.2d 884. We refuse to follow a contrary expression by the court in Evans v. Pennsylvania R. Co., 255 F.2d 205.

We hold that evidence of the occurrence of prior collisions at the same railroad crossing was not probative of any issue in this case, and should have been excluded.

2. *Prior negligence of other train crews.* In addition to receiving evidence concerning the occurrence of prior collisions at the same crossing, the lower court allowed witnesses to testify that, at prior times, locomotives of the defendant company had traversed the crossing without whistles being blown, bells rung, or engine lights turned on. It is not asserted that such occurrences were so frequent as to constitute a habit; to the contrary, it is conceded that "occasionally" such conduct happened. Citation of authority is unnecessary to support the proposition that the personal conduct of the employees in control of the locomotives at such prior times is not probative of the conduct of the employees (engineer and fireman) on the occasion in question. Such evidence should not have been received.

3. *Evidence as to safety devices at other railroad crossings maintained by the company.* The trial court permitted the plaintiff to introduce photographs of twelve additional railroad crossings maintained by the defendant company in the general Reno-Sparks area. Some of them show the presence of automatic gates and other safety devices which had not been installed or utilized at the Seventeenth Street crossing. Such evidence should not have been allowed. The Seventeenth Street crossing more than complied with the requirements of regulatory agencies. It is not contended otherwise. Nor does the record show that custom and general use require the presence of automatic gates, etc., at all railroad crossings. The authority to prescribe the particular facilities that may be regarded as essential to prevent crossing accidents, lies primarily within the legislative rather than the judicial sphere. The judicial function is to decide whether the crossing, as it existed, was maintained with reasonable care in the light of conditions there present. Lowry v. Seaboard Airline R. Co., 171 F.2d 625. With this general background in mind it is manifest that additional safety installations

at other crossings involving different conditions (density of traffic, topography, etc.) may not be employed to require a higher duty of the company. What is ordinary care at one crossing may be quite different from ordinary care at another. Absent legislative demand or the requirements of custom and usage, the issue of ordinary care must be decided in the light of conditions existing at the place of the crossing accident.

The reception of the evidence we have discussed casts serious doubt upon the reliability of the verdict. We do not hesitate to declare that such evidence prejudiced the defendants' right to a fair trial.

The lower court instructed the jury about wanton misconduct as a possible predicate for liability and punitive damages. A fair reading of the record fails to disclose a basis in fact for that instruction. As stated initially, the crossing was not causally defective, the lighting was adequate, and the warning devices provided for the operators of the diesel engine were in use —the lights, the whistle and the bells. Affirmative, positive evidence from interested and disinterested witnesses established all of these facts. They are not controverted in the record, except by an impermissible inference from the negative testimony of the plaintiff that she did not see the engine, from which the inference is drawn that its lights were not shining. The inference is not permissible on this record because the plaintiff testified that her attention was drawn to the east (and away from the approaching diesel engine) by other activity upon the tracks. Her failure to see the engine is thus explained. There is absolutely nothing to support her claim that the defendants or any of them intentionally performed an act which they knew or should have known would very probably cause harm. Rocky Mountain Produce v. Johnson, 78 Nev. 44, 369 P.2d 198; Crosman v. Southern Pacific Co., 44 Nev. 286, 194 P. 839. Even if the jury refused to believe the witnesses who testified that the engine's lights were on (which they were at liberty to do), a wanton misconduct instruction was improper, Crosman v. Southern

Pacific Co., supra, in view of all other relevant evidence in the case. We are forced to believe that the initial errors during trial regarding the reception of prejudicial evidence (heretofore discussed) caused the court to give the wanton misconduct instruction—the instruction must have rested upon such inadmissible evidence, for the testimony about the collision at hand does not supply a foundation for it. How easy it is for one mistake to cause another to occur.

Seldom do we believe it appropriate to mention an error which has not been assigned on appeal. However, as this matter must be remanded for another trial, it seems wise to do so in order to preclude its recurrence and the possibility of a blemished verdict. The record shows that the defendants objected to the last clear chance instruction given by the court. The record as it now stands does not permit the application of that doctrine. When the fireman warned the engineer that the plaintiff's car was entering upon the track (and in peril), the engine was about 30 feet from the spot where the impact occurred and traveling at a speed of eight miles per hour. The only evidence is that the engine, in such circumstances, could not stop in time with the emergency brake in operation. It is not an answer to assert that the doctrine of last clear chance was applicable because the engineer or fireman "should have seen" the plaintiff's car at an earlier time. Had they observed it sooner they would have seen it stopped at the crossing in a safe place and not in a position of peril, and could reasonably assume that it would remain there. Therefore, the instruction should not have been given. There was no last clear chance to avoid the collision. Duran v. Mueller, 79 Nev. 453, 386 P.2d 733; Cordano v. Pac. Intermtn. Exp., 74 Nev. 119, 324 P.2d 232; Ferris v. Albright's Electric Co., 70 Nev. 528, 275 P.2d 755.

Reversed and remanded for new trial.

BADT, C. J., and McNAMEE, J., concur.