MARTHA V. YTURRALDE AND OSWALD B. YTURRALDE, APPELLANTS, v. BARNEY'S CLUB, INC., A CORPORATION, RESPONDENT.

No. 6371

May 17, 1971                                    484 P.2d 1079

*Sedgwick, Detert, Moran & Arnold* and *Roger Sleight,* of San Francisco, California, and *Leslie A. Leggett,* of Reno, for Appellants.

*Wait & Shamberger* and *C. James Georgeson,* of Reno, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

This is an appeal from a jury's verdict in favor of respondent-defendant Barney's Club, Inc., and denying the claim of appellants-plaintiffs Martha V. and Oswald B. Yturralde for damages for injuries Martha suffered while standing on a stairway landing in Barney's Club. Martha was struck by one

Richard Herman Wohlert, a patron, who was exiting the premises. Appellants have specified several assignments of error that they claim the trial judge committed during the trial. We reject all the assignments, and we affirm the verdict of the jury.

1. *The Facts.*

The factual background of this case is simple and brief. The appellants were patrons of Barney's Club on the date of the accident. So was Wohlert, who had been drinking. Security Guard Jerome Keithley had asked Wohlert to leave the premises. He did so, but returned briefly to visit the men's room. As Wohlert was leaving the second time, he stumbled on the stairs, knocked Martha down, scrambled to his feet, and ran out to the parking lot. Martha was injured and hospitalized.

2. *The Instructions.*

Appellants requested the district judge to give as an instruction to the jury, Section 344 of the Restatement (Second) of Torts.[1] The district judge refused to give the requested instruction, but he did give Appellants' Instruction No. 22.[2] Without passing on the propriety of the rejected instruction, we believe that in this case the judge acted properly, because Instruction

---

[1]Restatement (Second) of Torts, § 344 (1965):

"A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

"(a) discover that such acts are being done or are likely to be done, or

"(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."

[2]Instruction No. 22:

"The proprietor of a place of business owes a duty of exercising reasonable or ordinary care to protect his patrons from injury at the hands of fellow guests. Any guest of such a place who is himself exercising ordinary care for his own safety and who has no information which would lead a reasonable person to a different conclusion has the right to assume that he is in an orderly house and that the proprietor through his employees will exercise reasonable care in maintaining appropriate decorum. An owner's duty to his invitees requires him to exercise reasonable care against injury through the negligence of [sic] wrongful acts of other invitees on the premises where the owner has reasonable cause to anticipate such acts and the probability of injury resulting therefrom. The proprietor's duty arises from his right of control over the premises and his power to restrain or expel offenders against the peace and safety of the premises."

No. 22 covered the issue involved, i.e., the affirmative duty of an owner to protect a patron against the acts of third parties. One instruction on a particular issue, if adequate, is sufficient. In Duran v. Mueller, 79 Nev. 453, 460, 386 P.2d 733, 737 (1963), this court said:

". . . If one instruction adequately covers a given theory of liability or defense, it is preferable that the court refuse additional instructions relating to the same theory, though couched in different language. . . ."

3. *The Deposition.*

Appellants read to the jury part of the deposition of the former Chief Security Officer, Curt Carter. The district judge excluded certain parts of the deposition on the ground it was hearsay and not admissible.[3] These rejected portions of Carter's deposition were hearsay, but appellants contend such portions were admissible in evidence under exceptions to the

---

[3]Excluded portions of deposition of Curt Carter:

"Q [by Mr. Leggett, counsel for appellants-plaintiffs] Did Mr. Keithley tell you how the accident occurred?

"A Yes. He had stated he first observed Mr. Wohlert in the premises when he was performing his duties in the pit area, as is referred to in the casinos. At that time Mr. Wohlert apparently confronting either his wife or possibly a girl friend, a female subject in there, and their conversation became very loud and boisterous there in public view. And at that time Mr. Keithley went over and advised Mr. Wohlert that he was either to conduct himself in a peaceful and lawful and orderly manner upon the premises or he would have to leave."

". . .

"Q How long before the incident involving Mrs. Yturralde did this take place?

"A I would say approximately five minutes at the most.

"Q Did Mr. Keithley tell you what Mr. Wohlert's condition was at that time with reference to intoxication or sobriety?

"A Yes. He stated that it was apparent that Mr. Wohlert had been drinking, due to the strong odor of an alcoholic beverage upon his person. But due to the physical prowess and stability—his stability was satisfactory—he did not appear to be influenced or impaired as far as his ability in a physical capacity.

"Q After Mr. Keithley instructed Mr. Wohlert to change his demeanor, what did Mr. Wohlert then do?

"A He appeared to become very complacent at first, after being contacted by Mr. Keithley. But after a couple of more words, I guess, at that time, with his alleged wife or girl friend, he observed Mr. Keithley looking at him as though to say I told you, you know, of his demeanor. In other words, if you are going to conduct yourself in this manner, you will have to leave. Which at that time he left in a hurry and went out the door. And upon going out the door, apparently through Mr. Keithley's observation, he returned to possibly utilize the

exclusionary rule. We question this. In making the statements quoted by Carter, Keithley was not speaking *for* his employer, he was relating his recollection of events *to* his employer's agent. In any event, if the trial court's action was error, it was harmless, for we do not view the excluded testimony as favorable to appellants. Apparently it was offered to show that respondent had notice of Wohlert's condition. If so, Keithley stated, according to Carter's statement in the deposition: "[H]e [Wohlert] did not appear to be influenced or impaired as far as his ability in a physical capacity." Appellants' rights could not have been substantially affected by the district judge's ruling, and we reject this assignment of error. NRCP 61.[4]

4.   *The Refusal to Continue the Trial.*

At about three o'clock in the afternoon on the second day of the trial, appellants asked the district judge for a recess until the following day, so that Doctor Teipner, a medical witness, could appear. The appellants advised the judge that Doctor Teipner was at that time in surgery. The district judge refused appellants' request, and the case was concluded. Appellants made no offer of proof as to the doctor's testimony, nor did they offer his medical records. We are told that the district judge had warned counsel in the morning of the second day that he would not entertain delaying recesses and that counsel should have all witnesses available to testify, so that the trial could move along without delay.

---

rest room area or something. At this time he came back in the building and went upstairs. Mr. Keithley apparently pursued Mr. Wohlert to see where he was going due to the fact he had already left, been asked to leave, and then Mr. Keithley observed him leaving the rest room area and coming back down the stairs leading to this landing area at the time Mrs. Yturralde was coming up the stairs. He contacted her in a manner which appeared to be accidental, as far as bodily contact, due to the fact that he was moving rapidly, not in a manner which would be interpreted as intoxicated, but just being in a hurry, and apparently stumbled due to his speed and hurriedness and struck her and knocked her down."

[4]NRCP 61:
"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

While we appreciate that the management of a trial is best left to the fair and sound discretion of the presiding judge, and that deliberate delaying tactics may not be tolerated, we would observe that if in fact a medical witness is called into unexpected surgery, certainly an appropriate recess normally would be in order so that he may testify before the jury. In this case, however, the jury absolved Barney's Club of any negligence and therefore never reached the issue of damages. The order of the court refusing to grant the requested recess was harmless.

The verdict of the jury is affirmed.

ZENOFF, C. J., BATJER and GUNDERSON, JJ., and COMPTON, D. J., concur.

