LESLIE ANN WOOD; SHELLY M. WOOD, A MINOR, BY HER GUARDIAN AD LITEM, LESLIE ANN WOOD; KATHRYN M. PRADERE; ROSE FISHER; AND GRACE IRENE LAMBERT, MARGARET ROSE EASTON, AND JAMES LUTHER FISHER, JR., AND DIANE MARIE FISHER, MINORS, BY THEIR GUARDIAN AD LITEM, ROSE FISHER, APPELLANTS, *v.* SOUTHERN PACIFIC COMPANY, ROBERT R. ROBINSON, AND JOHN A. EGGERS, RESPONDENTS.

No. 6623

October 4, 1972                    501 P.2d 652

*Robert Gaynor Berry,* of Carson City, *Mack Fry,* of Reno, and *Richard E. Crow,* of Sacramento, California, for Appellants.

*Vargas, Bartlett & Dixon,* of Reno, for Respondents.

## OPINION

By the Court, THOMPSON, J.:

Wilber Wood, James Fisher and Russell Pradere, while in the course of their employment with Sierra Pacific Power

Company, sustained fatal injuries when the power company truck in which they were riding as passengers was struck by a train. This wrongful death action was commenced by their heirs against Southern Pacific Company, John Eggers, the operator of the diesel locomotive, and Robert Robinson, the senior engineer who supervised the operation of the locomotive and occupied the left-hand seat in the engineer's cab. The jury returned general verdicts upon which judgment was duly entered.

The appellants concede that the jury properly could have found that the defendants were not negligent but, by this appeal, assert that prejudicial error was committed by the trial court in submitting instructions about contributory negligence of the decedents as passengers in the truck. Since the general verdicts were not accompanied by answers to interrogatories, NRCP 49(b), substantial error in the charge of the court as to theories of liability or defense would require a remand for another trial. Otterbeck v. Lamb, 85 Nev. 456, 463, 456 P.2d 855 (1969); Lightenburger v. Gordon, 81 Nev. 553, 579, 407 P.2d 728 (1965). Subordinate errors also are assigned and will be considered.

1. The decedents as passengers in the power company truck were under a duty to exercise ordinary care for their own safety, and the court instructed the jury to that effect.[1] That instruction, couched in general terms, obviously was proper. The court was under no duty to further elaborate upon the concept of contributory negligence or embellish its scope by referring to particulars. Prell Hotel Corp. v. Antonacci, 86 Nev. 390, 392, 469 P.2d 399 (1970); Duran v. Mueller, 79 Nev. 453, 460, 386 P.2d 733 (1963).

The appellants offered an instruction based upon language from the opinion of this court in Otterbeck v. Lamb, 85 Nev. 456, 456 P.2d 855 (1969), to the effect that the decedents

---

[1] Instruction 29: "If you find that there was negligence on the part of the driver of the vehicle in which the decedents Wilber M. Wood, Russell M. Pradere, and James L. Fisher were riding as passengers, then the driver's negligence cannot be charged to the said decedents. The care required of the decedents as passengers is their duty to take ordinary precautions for their own safety, use ordinary care for their own protection, under similar circumstances, and the determination of whether this duty is complied with is one of fact for the jury." This was the sole instruction given dealing directly with the meaning of contributory negligence.

as passengers were not required to maintain a lookout nor were they under a duty to warn the driver absent the special circumstances outlined in the Otterbeck case.[2] Otterbeck does not stand for the proposition that the court was obliged to so instruct the jury. Indeed, Otterbeck specifically approved the first part of an instruction there considered which was almost identical to the instruction given here. That part read "[A] passenger in an automobile is under a legal duty to take ordinary precautions for her own safety, and to use ordinary care for her own protection, and whether or not she exercises ordinary care for her own safety is a question of fact for the jury to decide." We conclude, therefore, that the instruction given in this case was correct and that the court was not compelled to instruct further on the subject.

The appellants insist that there was absolutely no evidence in the record or inferences that reasonably could be drawn from the evidence to warrant submission of the issue of the decedents' contributory negligence to the jury. Contributory negligence, or the absence thereof, is usually a question of fact and becomes one of law only when the evidence is of such a character that it will support no other legitimate inference. Wagon Wheel v. Mavrogan, 78 Nev. 126, 128, 369 P.2d 688 (1962); Carter v. City of Fallon, 54 Nev. 195, 201, 11 P.2d 817 (1932). Measured by this standard we are unable to find that the court erred in submitting this issue to the jury for resolution.

The accident occurred on a bright, clear autumn afternoon several miles west of Reno at a point where Mayberry Drive crosses the main line of the Southern Pacific railroad tracks. The driver of the truck and his passengers had a totally unobstructed view of more than 1500 feet of track upon which the train was proceeding. The bell of the train's diesel engine

---

[2]Whether the language in Otterbeck v. Lamb, supra, concerning lookout and warning governs railroad crossing accidents is a question. We state this because in 1942, this court approved jury instructions advising, inter alia, that the tracks of a railroad company are in themselves a warning of danger, and that a passenger in a car does have the duty to look and listen for approaching trains, and the failure to do so would be negligence which, if it proximately contributed to the accident, would bar recovery. L. A. & S. L. R. Co. v. Umbaugh, 61 Nev. 214, 238, 239, 240, 123 P.2d 224 (1942). We do not now decide whether Otterbeck overruled Umbaugh sub silentio, or whether Umbaugh is still viable insofar as railroad crossing accidents are concerned. Cf. Raymond v. Southern Pacific Company, 488 P.2d 460 (Ore. 1971).

commenced ringing more than 1325 feet west of the accident scene, its air whistles were blowing, and the headlight and oscillating light each was fully illuminated. Independent, disinterested witnesses heard the whistles blowing and stopped their conversation because of the noise therefrom. None of the passengers in the truck apparently paid the slightest attention to these circumstances. One must conclude that reasonable minds could differ as to whether the passengers exercised ordinary care for their own safety. That issue properly was submitted to the jury for decision.

2. The trial court refused to give a requested instruction that "travelers using a public highway have the same right to the use of a grade crossing as the railroad company has; their rights are mutual and reciprocal." In Southern Pacific Co. v. Watkins, 83 Nev. 471, 435 P.2d 498 (1967), we held that it was not error to give that instruction. Id. at 491.[3] It does not follow, however, that error occurs when the instruction is not given. Duran v. Mueller, 79 Nev. 453, 460, 386 P.2d 733 (1963). It was not a necessary instruction.

Other errors regarding jury instructions have been considered and found to be without merit.

3. The trial court would not allow the appellants to offer evidence that the Southern Pacific Company did not investigate the need for an automatic signal at the Mayberry crossing. This ruling is assigned as prejudicial error. That evidence presumably was offered to show that the intersection was dangerous. The record is full of evidence on that point. Large photographs were received showing the crossing in detail and the surrounding area. Testimony concerning the number of trains, cars and trucks using the crossing each day was introduced. Indeed, an expert gave his opinion that the crossing was dangerous. The jury apparently rejected any contention that the condition of the crossing proximately caused the accident. In these circumstances, the bit of proffered evidence rejected by the court, if admissible, cannot be deemed to have affected

---

[3]NRS 484.349(1)(c) provides that the driver of a vehicle shall stop when a railroad train approaching within approximately 1500 feet of the highway crossing emits a signal audible from such distance and such train, by reason of its speed or nearness to such crossing, is an immediate hazard. Southern Pacific Co. v. Watkins, supra, did not mention this statute. Depending upon the circumstances present, that statute obviously may affect the propriety of the "equal right" instruction given in the Watkins case.

the substantial rights of the appellants. NRCP 61. The jury had abundant evidence before it upon which to decide whether the crossing, as it existed, was maintained with reasonable care in the light of conditions there present, Southern Pacific Co. v. Harris, 80 Nev. 426, 395 P.2d 767 (1964), and whether the condition thereof caused the tragic occurrence.

4. The remaining assignment of error regarding the admission of certain evidence is unsupported by authority in either the appellants' brief or oral argument and will not be considered.

Affirmed.

BATJER and MOWBRAY, JJ., concur.

GUNDERSON, J., with whom ZENOFF, C. J., agrees, dissenting:

In L. A. & S. L. R. Co. v. Umbaugh, 61 Nev. 214, 123 P.2d 224 (1941), this court in substance held a jury was properly instructed that a railroad could kill an 11-year-old girl with impunity, if she failed to keep a lookout as the car in which she was riding approached a railroad crossing. However, we long ago repudiated that view of a passenger's duties. In Duffy v. Flynn, 72 Nev. 278, 302 P.2d 967 (1956), we held evidence that a passenger was sleeping did not constitute sufficient evidence of contributory negligence to support a verdict adverse to him. Later, in Otterbeck v. Lamb, 85 Nev. 456, 456 P.2d 855 (1969), we expressly endorsed what is certainly now the virtually uniform rule concerning the duties of an automobile passenger, saying:

"It is also unquestionably the majority rule in the United States that a passenger in an automobile has no duty of lookout or duty to warn the driver in the absence of special circumstances. Restatement of Torts Second, Sec. 495, Comments c-f, pages 556–558; Duffy v. Flynn, 72 Nev. 278, 302 P.2d 967 (1956); Frame v. Grisewood, 81 Nev. 114, 399 P.2d 450 (1965); Drake v. Driscoll, 267 F.2d 274 (5th Cir. 1959); Watters v. Parrish, 115 S.E.2d 1 (N.C. 1960); Lamfers v. Licklider, 332 S.W.2d 882 (Mo. 1960); Robinson v. Cable, 11 Cal.Rptr. 377 (Cal. 1961); Pobor v. Western Pacific Railroad Co., 359 P.2d 474 (Cal. 1961); Klein v. Southern Pacific Co., 21 Cal.Rptr. 233 (D.C.App. 1962); Van Pelt v. Carte, 26 Cal.Rptr. 182 (D.C.App. 1962); Mitchell v. Colquette, 379 P.2d 757 (Ariz. 1963); Borders v. Borders, 376 S.W.2d 519 (Ky. 1964).

"The special circumstances which create the duty are obvious, imminent, danger, of which the passenger is aware

and the driver is not; or where the driver is sleepy or intoxicated, which is known to the passenger; or where road or weather conditions are particularly hazardous. Otherwise, the passenger should refrain from advice, instruction or attempted control over the driver, for fear of creating more danger by a distraction rather than lessening it by unwarranted, unwise advice. If the passenger specifically undertakes a lookout, then he is under a duty to do an ordinarily careful job of it." 85 Nev., at 461–462.

1. Appellants contend, first, that this being our law, the evidence was insufficient to justify the district court in submitting a question of their decedents' contributory negligence to the jury. The majority really do not meet this contention. Contributory negligence is an affirmative defense that must be proved. NRCP 9(c). Here, it is questionable that the defendant ever proved more than that appellants' decedents were unwatchful for, and oblivious to, impending danger—i.e., that they were acting in accord with their rights as passengers in a motor vehicle.

In Van Pelt v. Carte, 26 Cal.Rptr. 182 (Cal.App. 1962), upon which we relied in deciding *Otterbeck,* the court noted that conjecture, surmise and guesswork will not justify a determination of contributory negligence. The court noted an inference one saw what was in plain sight may be drawn only when it is shown he did look, or was under a duty to look. The court therefore said:

"On the facts presented, we have no evidence whatever that plaintiff saw or heard anything prior to the accident which would cause an ordinarily reasonable person to doubt the reliability of her father as a driver or that danger threatened which required her survey of traffic. There was no evidence suggesting she knew three cars were approaching from the west or that she ever looked ahead and saw Avenue blocked in the intersection. There was no evidence that she had any reason to believe that her father did not observe and take into consideration all the action described in the evidence. Prior to the accident she may have had her attention on a bird flying, a tree, the mountains, a house, or any other of a hundred things. . . ."

"Since the guest's 'duty to look' does not arise until some factor of danger comes to his attention, thus charging him as a person of ordinary prudence to take observation for his own safety, and since no such factor appears in this case, we are unable to apply the duty to plaintiff. Since nothing in the evidence indicates she did, in fact, look at the traffic condition,

no inference on either score can arise. Defendant completely failed in its burden of proof as to contributory negligence and plaintiff's own evidence produced nothing to show contributory negligence on her part. The contributory negligence instruction should not have been given." Id., at 186.

Furthermore, if one assumes there was evidence to show the decedents were or should have been aware of impending danger, what Mr. Justice Thompson said in Frame v. Grisewood, 81 Nev. 114, 399 P.2d 450 (1965), seems germane in the instant case:

"[T]he guest's failure to warn was not, in the circumstances of this case [where the passenger knew no more than the driver], probative of contributory negligence. Further, it strikes us that once the trip was commenced, the race with the Austin-Healey underway, and high speed attained [once danger was impending], there was little, if anything, the guest could do to protect himself, except to sit tight and hope for the best. [This is especially true here, where the decedents were in the back of the truck.] At that point a choice was not open to him. In any event, there is absolutely nothing in the record to show that the guest's action was a proximate or concurring cause of the accident." 81 Nev., at 120; 399 P.2d, at 453.

2. Appellants also contend that, at a minimum, they were entitled to have our law concerning passengers' duties properly stated to the jury, as they requested the district court to do. About this, there should be no question whatever. It was vital to appellants that the jury know appellants' decedents had no duty to keep a lookout. Left to believe otherwise, the jury could think they were negligent in not looking to see the "headlight and oscillating light" of which the majority speak— or negligent in listening to the world series on a portable radio (as the evidence indicates they may have been), rather than listening for the bell and whistle the majority mention. Obviously, the instruction for which appellants made a timely request was necessary to enable the jury to evaluate the evidence properly and, therefore, its refusal was prejudicial error.

3. The majority obscure these issues by suggesting there remains a possibility that railroads, alone among tortfeasors, still enjoy the unconscionable protections this court afforded them in *Umbaugh*. Obviously, any such discrimination in favor of railroads would be purely arbitrary. *Otterbeck* recognized that absent some showing of special circumstances, a passenger need not keep a lookout, but may properly read, daydream, or even sleep if he chooses. Surely the majority do not seriously suggest that while a passenger may sleep, he must do

so with ears cocked and eyes open for trains. Such a rule would, of course, be a legal curiosity. Furthermore, cases cited with approval in *Otterbeck* involved collisions with trains at railroad crossings. Pobor v. Western Pacific Railroad Company, 359 P.2d 474 (Cal. 1961); Klein v. Southern Pacific Company, 21 Cal.Rptr. 233 (Cal.App. 1962). In the latter case, the court noted: "The passenger has a right to suppose that the driver, on approaching a railway crossing with which he is familiar, will exercise due care for the protection and safety of his passengers, and that, even when so near the crossing as to be in apparent danger of collision with an oncoming train, he will or may take some action which will avert an accident." Id., at 237–238.

In view of the foregoing, I suggest that it cannot seriously be contended that the doctrine of *Otterbeck* is limited to situations in which the defendant is not a railroad, and that it is questionable judicial administration to suggest otherwise. After all, some busy trial judge might take us seriously.

We should forthrightly recognize *Otterbeck,* forthrightly apply it, and reverse.