OPINION
 

 By the Court,
 

 Hardesty, J.:
 

 In this appeal, we address two issues. First, we clarify the proper use of comparative negligence jury instructions in constructional defect cases. We conclude that the use of a comparative negligence jury instruction is only appropriate in constructional defect cases that properly assert a negligence claim under
 
 Shuette
 
 v.
 
 Beazer Homes Holdings Corp.
 

 [1]
 

 Second, we emphasize the
 
 *1432
 
 importance of using special verdict forms in constructional defect cases when there are differing theories of liability and defenses directed to one, but not all, of the liability theories.
 

 In this case, the comparative negligence jury instruction was insufficient because it did not distinguish between constructional defect claims that may be subject to comparative negligence and those that may not. Going further, the general jury verdict form, which required the jury to total the damages if liability was established under either a breach of contract or a negligence theory, was defective because it failed to limit the comparative negligence assessment to the negligence claim. Consequently, we reverse the district court’s judgment and order, and we remand the case for a new trial.
 

 FACTS AND PROCEDURAL HISTORY
 

 Appellants Marilyn Skender and David Dziurda (collectively, Skender) entered into a written contract with respondents Brun-sonbuilt Construction and Development Company, LLC,
 
 [2]
 
 to construct a single-family residence in Reno, Nevada. Under the contract, Brunsonbuilt agreed to construct the residence on Skender’s real property according to plans provided by Skender. Skender warranted that the plans were adequate and agreed to accept liability for any damages caused by defective plans and specifications. The contract also provided that Skender would indemnify Brunsonbuilt for all claims and causes of action arising from Skender’s negligence or Skender’s designs and specifications.
 

 Skender supplied the design plans and was actively involved in overseeing the residence’s construction and issued numerous written change orders increasing the construction’s costs. Construction was completed in August 1999.
 

 Subsequently, Brunsonbuilt filed a district court complaint against Skender for breach of contract, alleging that Skender had failed to pay for the written change orders to the contract. Skender filed an answer and counterclaim to Brunsonbuilt’s complaint, alleging that Brunsonbuilt had delayed construction; failed to supervise its subcontractors; disregarded the plans, specifications, and change orders; and provided sloppy and defective construction. Skender’s complaint asserted, among other theories of liability, claims for breach of contract and negligence, seeking damages based on 40 separate alleged constructional defects, including defects in the roof.
 

 
 *1433
 
 Brunsonbuilt replied alleging that Skender made several errors during construction that amounted to comparative negligence. For example, Brunsonbuilt alleged that Skender ordered incorrect roof tiles that eventually had to be removed and replaced with correct tiles; insisted on ordering doors from a particular supplier, despite Brunsonbuilt telling Skender that those doors were known for having a design defect; instructed their supplier to provide unsuitable interior doors; and directed that a sliding glass door be installed in a manner contrary to the design plans, without providing the necessary additional structural engineering.
 

 Brunsonbuilt also filed a third-party complaint against various subcontractors, including Newell Roofing, Inc. The third-party complaints were dismissed or settled before trial, except as to the claim against Newell Roofing, which derived entirely from the roof defects alleged by Skender. Skender, Brunsonbuilt, and Newell Roofing were the only remaining parties at trial.
 
 [3]
 

 Towards the end of trial, the parties and the district court discussed proposed jury instructions and verdict forms. The district court agreed to instruct the jury on both parties’ breach of contract claims, as well as on Skender’s negligence claim. On the issue of comparative negligence, the district court issued a jury instruction that read, “[cjomparative negligence is negligence on the part of [Skender] which, cooperating to some degree with negligence of another helps in proximately causing an injury to [Skender].”
 

 With regard to the verdict forms, Skender proposed a special verdict form, which separated the breach of contract claim from the negligence claim, asking the jury to determine if Brunsonbuilt had breached the contract or had been negligent and to award total damages accordingly, specifying the amount of damages on each claim. The proposed verdict form also asked the jury to determine if Skender had been comparatively negligent, and if so, by what percentage. The district court, however, concerned that Skender’s proposed verdict form could lead to a double recovery, rejected it. Determining that Skender’s breach of contract and negligence claims were subsumed by NRS Chapter 40’s constructional defect provisions, the district court decided that, instead of using a special verdict form, a general verdict form would be more appropriate in light of that chapter’s damages limitations.
 

 The jury ultimately returned two verdicts — the Brunsonbuilt verdict and the Skender verdict. Under the Brunsonbuilt verdict, the jury found that Skender had breached the parties’ contract by failing to pay the costs incurred through the change orders and assessed damages at $34,000. Under the Skender verdict, the jury found for Skender and assessed Skender’s total damages for constructional defects at $452,734, without a reduction for any com
 
 *1434
 
 parative negligence by Skender. Nonetheless, the jury also found that Skender was 55 percent comparatively negligent and that this comparative negligence was the proximate cause of Skender’s damages. Lastly, the Skender verdict stated that $49,000 of Skender’s total damages were attributable to roof defects. Fault and liability for the roof defects were apportioned at 71 percent to Brunsonbuilt and 29 percent to Newell Roofing.
 

 The district court ultimately entered a judgment on the jury’s verdict in favor of Brunsonbuilt for $34,000 on its breach of contract claim, but, despite the jury’s purported assessments, against Skender on Skender’s claims. Additionally, the district court awarded $231,150.45 in attorney fees to Brunsonbuilt and, determining that Skender was contractually obligated to indemnify Brunsonbuilt for the attorney fees and costs sought by Newell Roofing, the district court awarded $48,008 in attorney fees and $34,595.04 in costs to Newell Roofing.
 

 After the district court entered its judgment, Skender moved for a new trial, which the district court denied. Skender now appeals the judgment on the jury verdict and the district court order denying the motion for a new trial.
 
 [4]
 

 DISCUSSION
 

 Skender asserts that the trial court erred by applying comparative negligence principles in a constructional defect case and by refusing to give Skender’s proposed special verdict form to the jury. Brunsonbuilt, in contrast, argues that both the application of the comparative negligence defense and the general jury verdict form were appropriate. Although Skender has raised several additional arguments on appeal,
 
 [5]
 
 having considered them, we conclude that they are without merit. Thus, instead of further addressing each of Skender’s arguments, we focus on the application of the comparative negligence defense and the use of general verdict forms in constructional defect cases.
 

 Comparative negligence in constructional defect cases
 

 Skender argues that the district court erred by instructing the jury on comparative negligence as a defense in the underlying constructional defect case under NRS Chapter 40. Brunsonbuilt asserts that a comparative negligence defense is appropriate in NRS
 
 *1435
 
 Chapter 40 cases, based on
 
 Olson v.
 
 Richard,
 
 [6]
 
 and in this case in particular, based on its contract with Skender, which by its terms leaves room for issues of homeowner negligence.
 

 This court has held that “[t]he district court has broad discretion to settle jury instructions.”
 
 [7]
 
 Accordingly, “this court will review a district court’s decision to give a particular instruction for an abuse of discretion or judicial error. An abuse of discretion occurs if the district court’s decision is arbitrary or capricious or if it exceeds the bounds of law or reason.”
 
 [8]
 

 While our decision in
 
 Olson
 
 did not specifically address contributory negligence in a constructional defect case, we did hold that a negligence claim is viable in a constructional defect case brought under NRS Chapter 40.
 
 [9]
 
 Our reasoning was twofold. First, the language of NRS 40.640, which defines the scope of a contractor’s liability, does not limit a homeowner’s recovery to defects covered by contract or warranty.
 
 [10]
 
 Second, because NRS 40.635(2) states, “Chapter 40 prevails ‘over any conflicting law otherwise applicable to the claim or cause of action,’ ” we concluded that the Legislature’s adoption of NRS 40.635(2) demonstrated the Legislature’s intent that the economic loss doctrine previously adopted by this court not preclude a homeowner from alleging a negligence claim in a constructional defect case.
 
 [11]
 
 Notably, the trial court in this case, while recognizing that a party could make a negligence claim under
 
 Olson,
 
 concluded that the provisions of NRS Chapter 40 fused the claims for negligence and breach of contract into a single claim for damages. We disagree.
 

 Under NRS 40.655, the damages available in a constructional defect case are limited to those listed in the statute.
 
 [12]
 
 However, the total amount of damages is unaffected by the theory of liability
 
 *1436
 
 asserted. Thus, a plaintiff in a constructional defect case may recover on differing theories, but the damages cannot be duplicated and must fall within the categories listed in NRS 40.655.
 

 We recently recognized the comparative negligence defense in a constructional defect case,
 
 Shuette v. Beazer Homes Holdings Corp.
 

 [13]
 

 In
 
 Shuette,
 
 we explained that “[comparative negligence applies only to conduct that proximately contributes to an injury’s causation, and not to subsequent acts that merely aggravate the injury or its consequences.”
 
 [14]
 
 Based in part on this logic, we suggested that a comparative negligence defense is proper in constructional defect cases when the defect was not present at the time of construction and when “the homeowners’ actions contributed to then-existing conditions so that the defect” appeared afterward.
 
 [15]
 

 In the present case, the district court instructed the jury on proximate cause and comparative negligence.
 
 [16]
 
 As noted, a party in
 
 *1437
 
 Nevada can bring a negligence claim in a constructional defect case under NRS Chapter 40.
 
 [17]
 
 However, under
 
 Shuette,
 
 a comparative negligence defense can only be applied in a constructional defect case when the defect was not present at the time of construction and when the homeowners’ conduct contributed to existing conditions such that the defect appeared later.
 
 [18]
 
 However,
 
 Shuette
 
 involved the construction of a residence for an owner who did not participate in the planning or construction. When the owner does play a role in planning and construction, as occurred here, the extent of the comparative negligence defense may be expanded to include the owner’s participation in either the planning or construction and whether such participation caused any damage under NRS 40.655.
 

 Therefore, comparative negligence jury instructions in constructional defect cases must be consistent with our holding in
 
 Shuette
 
 or must address the expanded role of the homeowner in the planning, design, or construction of the residence that is the subject of the constructional defect. Specifically, the instruction must require the jury, when awarding damages on a negligence claim, to apply comparative negligence to those constructional defects caused by planning and design or those defects described in
 
 Shuette
 
 that appear later because of homeowner conduct.
 
 [19]
 
 The allegations of comparative negligence in this case implicated different constructional defects. Because the district court did not distinguish between the constructional defects or the proximate cause for each in its jury instruction on comparative negligence, the instruction was incomplete. Accordingly, the district court’s comparative negligence instruction in this case constituted judicial error.
 

 
 *1438
 

 Use of general verdict forms in constructional defect cases
 

 Skender argues that the general verdict form was insufficient because it did not identify their individual claims for negligence and breach of contract. Skender therefore argues that the general verdict rule applies and the jury’s award is supported by both claims. Therefore, Skender asserts, the district court’s application of the comparative negligence rule, extinguishing the jury verdict, was in error.
 

 Under the general verdict rule, a court will sustain a general verdict where several counts are tried if any one count is supported by substantial evidence and is unaffected by error.
 
 [20]
 
 The rule “ ‘relieves an appellate court from the necessity of adjudicating claims of error that may not arise from the actual source of the jury verdict that is under appellate review.’ ’ ’
 
 [21]
 
 Consequently, the rule is one of “ ‘appellate jurisprudence’ ” and “ ‘[a] party desiring to avoid the effects of the general verdict rule may elicit the specific grounds for the verdict by submitting interrogatories to the jury.’ ’ ’
 
 [22]
 
 However, the general verdict rule does not apply in a case that involves special findings that assign specific damages on specific theories of recovery.
 
 [23]
 
 Because this case involved special findings that assigned specific damages on specific theories of recovery, we conclude that the general verdict rule does not apply here.
 

 Nonetheless, the use of the general verdict form was improper. This court has suggested that a special verdict form be used when a case presents more than one theory of liability or defense.
 
 [24]
 
 We have stated that in such a case, under NRCP 49(b), the use of a general verdict form without special interrogatories could yield substantial error requiring remand for another trial.
 
 [25]
 

 Use of special verdict forms in constructional defect cases
 

 The need for a special verdict form is particularly striking in constructional defect cases because of the multiple potential
 
 *1439
 
 theories of liability and the limited availability of a comparative negligence defense under
 
 Shuette.
 
 Even though a party may recover on multiple theories, the defenses asserted will not necessarily apply to all those theories. Without a special verdict form, it is impossible to determine on which claim damages were awarded and whether the comparative negligence defense is actually available pursuant to
 
 Shuette.
 
 District courts cannot award damages for negligence that have also been awarded for breach of contract.
 

 Therefore, we hold that when parties introduce multiple theories of liability in a constructional defect case and one party asserts comparative negligence as a defense, the district court must (1) specifically instruct on those aspects of the case to which the negligence claim applies, being mindful of Shuette’s limitations on the comparative negligence defense, and (2) use a special verdict form that makes clear under which theory damages are awarded
 
 [26]
 
 and the theory of liability to which the defenses apply. The district court’s failure to do these two things below constitutes error in this case.
 

 CONCLUSION
 

 The district court erred in failing to properly instruct the jury on comparative negligence by not requiring the jury to distinguish between any constructional defects present at the time of construction and any defects potentially affected by Skender’s participation in the planning and design of their residence. In addition, the district court erred by giving the jury a general verdict form instead of a special verdict form. Given these errors, the district court’s judgment and order denying Skender’s motion for a new trial must be reversed.
 

 Further, if Brunsonbuilt did breach the contract, then Skender is not obligated to pay the outstanding debts on the contract. Lastly, the district court awarded Newell Roofing attorney fees, and found that Skender must indemnify Brunsonbuilt for these attorney fees, based on the outcome of the trial. All of these issues must be addressed under this court’s current holdings. Accordingly, we reverse the district court’s judgment and order and remand this matter for a new trial consistent with this opinion.
 

 Becker and Parraguirre, JL, concur.
 

 [1]
 

 121 Nev. 837, 124 P.3d 530 (2005).
 

 [2]
 

 Brunsonbuilt was formerly a general partnership owned and operated by Douglas Brunson and Edward McCaffrey. The contract was initially between Skender and the Brunsonbuilt partnership, which transferred its assets and liabilities to the newly formed LLC. The general partnership, the company, Brunson, and McCaffrey are all named parties to this appeal. They are collectively referred to as “Brunsonbuilt” throughout this opinion.
 

 [3]
 

 The district court specifically instructed the jury that Brunsonbuilt was suing Newell Roofing for comparative indemnity.
 

 [4]
 

 To the extent that Skender also seeks to appeal the denial of the motion to amend or for judgment notwithstanding the verdict, we note that those decisions are not appealable.
 
 Uniroyal Goodrich Tire
 
 v.
 
 Mercer,
 
 111 Nev. 318, 320 n.1, 890 P.2d 785, 787 n.1 (1995).
 

 [5]
 

 Skender makes several additional assertions on appeal: (1) the district court erred by failing to interpret Skender’s award of damages for $452,734 as an award for breach of contract, (2) the jury’s finding that Skender was 55 percent comparatively negligent is not supported by substantial evidence, (3) the jury’s finding that Skender was vicariously liable for the design professionals
 
 *1435
 
 Skender hired is not supported by substantial evidence, (4) the district court erred by entering judgment in favor of Brunsonbuilt on its breach of contract claim, (5) the district court abused its discretion by awarding attorney fees to Brunsonbuilt, (6) the district court abused its discretion by awarding expert witness fees to Brunsonbuilt, (7) the district court abused its discretion by excluding expert testimony concerning the warranty on the roof, and (8) the district court erred by granting Brunsonbuilt’s motion for indemnity.
 

 [6]
 

 120 Nev. 240, 89 P.3d 31 (2004).
 

 [7]
 

 Jackson v. State,
 
 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001).
 

 [8]
 

 Id.
 

 [9]
 

 120 Nev. at 244, 89 P.3d at 33.
 

 [10]
 

 Id.
 

 [11]
 

 Id.
 
 at 243, 89 P.3d at 33 (quoting NRS 40.635(2)).
 

 [12]
 

 NRS 40.655 states,
 

 1. Except as otherwise provided in NRS 40.650, in a claim governed by NRS 40.600 to 40.695, inclusive, the claimant may recover only the following damages to the extent proximately caused by a constructional defect:
 

 
 *1436
 
 (a) Any reasonable attorney’s fees;
 

 (b) The reasonable cost of any repairs already made that were necessary and of any repairs yet to be made that are necessary to cure any constructional defect that the contractor foiled to cure and the reasonable expenses of temporary housing reasonably necessary during the repair;
 

 (c) The reduction in market value of the residence or accessory structure, if any, to the extent the reduction is because of structural failure;
 

 (d) The loss of the use of all or any part of the residence;
 

 (e) The reasonable value of any other property damaged by the constructional defect;
 

 (f) Any additional costs reasonably incurred by the claimant, including, but not limited to, any costs and fees incurred for the retention of experts to:
 

 (1) Ascertain the nature and extent of the constructional defects;
 

 (2) Evaluate appropriate corrective measures to estimate the value of loss of use; and
 

 (3) Estimate the value of loss of use, the cost of temporary housing and the reduction of market value of the residence; and
 

 (g) Any interest provided by statute.
 

 [13]
 

 121 Nev. 837, 124 P.3d 530 (2005). Our decision in
 
 Shuette
 
 was issued after the entry of final judgment in this case.
 

 [14]
 

 Id.
 
 at 859, 124 P.3d at 546.
 

 [15]
 

 Id.
 
 at 860, 124 P.3d at 546.
 

 [16]
 

 Jury instruction no. 38, the proximate cause instruction, states,
 

 Homeowners may recover only the following damages to the extent proximately caused by a constructional defect:
 

 a. The reasonable costs of any repairs already made that were nec-
 

 essary and of any repairs yet to be made that are necessary to cure any
 

 constructional defect that Brunsonbuilt failed to cure and the reasonable
 

 expenses of temporary housing reasonably necessary during the repair;
 

 b. The reduction in market value of the residence or accessory
 

 structure, if any, to the extent the reduction is because of a structural failure;
 

 
 *1437
 
 c. The loss of use of all or any part of the residence; and
 

 d. The reasonable value of any other property damage [caused] by the constructional defect.
 

 Jury instruction no. 26, the comparative negligence instruction, states,
 

 Brunsonbuilt seeks to establish that [Skender was] comparatively negligent. In order to determine the proportionate share of the total fault attributable to [Skender], you will of necessity be required to evaluate the combined negligence, if any, of [Skender], and the negligence of Brunsonbuilt, if any, and the negligence of Newell Roofing, if any.
 

 Comparative negligence is negligence on the part of [Skender] which, cooperating to some degree with negligence of another helps in proximately causing an injury to [Skender].
 

 [17]
 

 Olson v. Richard,
 
 120 Nev. 240, 244, 89 P.3d 31, 33 (2004).
 

 [18]
 

 121 Nev. at 859, 124 P.3d at 546.
 

 [19]
 

 Id.
 
 at 860, 124 P.3d at 546.
 

 [20]
 

 Tavaglione v. Billings,
 
 847 P.2d 574, 579 (Cal. 1993).
 

 [21]
 

 Tetreault
 
 v.
 
 Eslick,
 
 857 A.2d 888, 892 (Conn. 2004) (quoting
 
 Kalams
 
 v.
 
 Giacchetto,
 
 842 A.2d 1100, 1107 (Conn. 2004)).
 

 [22]
 

 Id.
 

 [23]
 

 Tavaglione,
 
 847 P.2d at 580.
 

 [24]
 

 Wood v. Southern Pacific Co.,
 
 88 Nev. 527, 501 P.2d 652 (1972).
 

 [25]
 

 Id.
 
 at 529, 501 P.2d at 653 (citing
 
 Otterbeck
 
 v.
 
 Lamb,
 
 85 Nev. 456, 463, 456 P.2d 855, 860 (1969);
 
 Lightenburger v. Gordon,
 
 81 Nev. 553, 579, 407 P.2d 728, 742 (1965),
 
 overruled on other grounds by Motenko v. MGM Dist., Inc.,
 
 112 Nev. 1038, 921 P.2d 933 (1996)).
 

 [26]
 

 Regardless of the number of theories, however, the total damages awarded for all theories of liability must not exceed those damages specified in NRS 40.655.