IN THE SUPREME COURT OF THE STATE OF NEVADA

IN THE MATTER OF THE SOMMER FAMILY LIVING TRUST, DATED FEBRUARY 13, 1996.

MARTA J. MAXWELL; BRADFORD C. SOMMER; AND BRITTANY SOMMER, Appellants,

vs.

JOHN HEMBREE, Respondent.

No. 73464

**FILED**

JUL 2 2 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## *ORDER OF REVERSAL AND REMAND*

This is an appeal from a district court order declining jurisdiction over a non-testamentary trust. Second Judicial District Court, Washoe County; David A. Hardy, Judge. At issue are the legal standards and discretion of district courts to exercise jurisdiction over and administer *inter vivos* trusts under NRS 164.010.[1] Because we cannot conclude that the district court exercised its discretion under NRS 164.010 with due regard to the applicable statutory standards, we reverse and remand for further proceedings consistent with this order.

Stockton and Arlene Sommer co-settled the Sommer Family Living Trust, a joint revocable trust, as California residents. They were the trust's original co-trustees. Stockton passed away before Arlene, who, as the surviving trustee, was then required under the trust agreement to

---

[1]NRS 164.010 and NRS 164.045 were amended in 2017. *See* 2017 Nev. Stat., ch. 311, § 51, at 1695-96 (amending NRS 164.010); *id.* § 52, at 1696-97 (amending NRS 164.045). This order refers to the versions of NRS 164.010 and NRS 164.045 that took effect in 2015. *See* 2015 Nev. Stat., ch. 524, §§ 59, 63, at 3548, 3551.

SUPREME COURT
OF
NEVADA

(O) 1947A

19-30716

distribute the trust property between two irrevocable subtrusts—one for the benefit of herself and the other for the benefit of Stockton's surviving issue, appellants Marta Maxwell, Bradford Sommer, and Brittany Sommer (the Sommers). The Sommers' subtrust was to receive Stockton's portion of the community property and all of his separate property, with the remaining property held in Arlene's subtrust. Stockton and Arlene intentionally excluded Arlene's children, including Arlene's son, respondent John Hembree, as beneficiaries under the living trust and its subtrusts. The trust instrument also provided that, "[a]fter the death of one of us, this agreement shall not be subject to amendment or revocation."

Several years after Stockton's death, Arlene decided to move from California to Sparks, Nevada. In preparation, acting as trustee of both subtrusts, she conveyed one-half undivided interests in the family home in California to each subtrust. She then sold the California home and deposited approximately $450,000 in proceeds into a Nevada-based bank account. She also purchased a home in Sparks, taking title in her personal name. The Sommers have alleged that Arlene paid for the Sparks home with funds traceable to the proceeds of the California home. Arlene lived in Sparks until her death 10 years later.

Arlene amended her subtrust three times after Stockton's death (the Sommers contest the validity of each amendment). As relevant to this case, Arlene's first amendment added her issue (including Hembree) as beneficiaries of her subtrust and removed the Sommers, who, under the original agreement, were to receive the remainder of the property in Arlene's subtrust, in addition to the property in their subtrust, upon Arlene's death. The first amendment also provided that Arlene's subtrust was to be administered exclusively in California, whereas the original trust

SUPREME COURT
OF
NEVADA

(O) 1947A

2

agreement specified that the trust was subject to judicial administration in the state where it "[was] then currently being administered."

Months before her death, Arlene conveyed the Nevada home from herself personally to her subtrust. She also executed another amendment, designating Hembree as successor trustee (the original agreement provided for other successors). After Arlene's death, Hembree sold the Nevada home, determined that the Sommers were not entitled to any of the proceeds from that sale, and informed the Sommers that they were only entitled to one-half of the funds remaining in Arlene's accounts when she died (approximately $30,000).

The Sommers petitioned the district court to assume jurisdiction of the trust and administer the trust estate in Nevada. They also petitioned the court to confirm Marta Maxwell as trustee of the Sommers' subtrust. Hembree objected to the petition, arguing that Nevada lacked jurisdiction under the amended terms of the trust and NRS 164.010. The probate commissioner recommended denying the Sommers' petition, relying on a situs-change provision in the original trust instrument. The district court adopted the recommendation and denied the petition. The Sommers appeal from that decision.

The issue presented is whether the district court erred in declining to assume jurisdiction of the trust under NRS 164.010. This issue implicates questions of trust construction, statutory interpretation, and jurisdiction, all of which are questions of law that we review de novo. *In re Connell Living Tr.*, 134 Nev., Adv. Op. 73, 426 P.3d 599, 602 (2018); *In re Aboud Inter Vivos Tr.*, 129 Nev. 915, 921, 314 P.3d 941, 945 (2013); *Clay v. Eighth Judicial Dist. Court*, 129 Nev. 445, 451, 305 P.3d 898, 902 (2013).

The Sommers argue that the trust conducted sufficient business in Nevada to support jurisdiction. They point to several facts: Arlene was a Nevada resident for nearly 10 years before she died; she owned real property in Nevada; she owned personal property and maintained bank accounts in Nevada; her will declared her a Nevada resident; just months before her death, she conveyed her Nevada home to her subtrust; Hembree then sold the Nevada property; several of the trust beneficiaries reside in Nevada; and the original instrument subjected the subtrusts to the jurisdiction of the state where they "[were] then currently being administered." The Sommers argue that these facts demonstrate that the trust conducted business in Nevada and satisfy each of the nexus conditions in NRS 164.045(4) (discussed below). Thus, the Sommers argue that the district court legally erred when it declined jurisdiction. Hembree responds by arguing that the district court has discretion to decline jurisdiction even if the statutory bases are met. He also argues that only a trust's *current* Nevada ties can establish a jurisdictional nexus under NRS 164.045(4). He further argues that the trust's situs was always in California. Hembree concludes that, in any case, the district court did not abuse its discretion in declining to exercise jurisdiction. We disagree.

A trust's settlor, trustee, or beneficiary may petition "the district court of the county in which the trustee resides or conducts business, or in which the trust *has been domiciled*," to administer the trust. NRS 164.010(1) (emphasis added). A trust "has been domiciled" in Nevada "if there is a clear and sufficient nexus between the trust and [Nevada]" under NRS 164.045(4). NRS 164.010(4)(a). A petitioner can establish "a clear and sufficient nexus" by showing that (a) the trust owns real property in Nevada, (b) the trust owns personal property in Nevada, (c) at least one

SUPREME COURT
OF
NEVADA

(O) 1947A

4

beneficiary resides in Nevada, or (d) "part of the administration of the trust occurs in [Nevada]." NRS 164.045(4). If the trust satisfies one of the NRS 164.045(4) requirements, the district court "may assume jurisdiction" under NRS 164.010 unless the "instrument expressly provides that the" trust's situs is not Nevada. NRS 164.045(3)(b) (express foreign situs exception).

The probate commissioner acknowledged but then repudiated this statutory scheme, reducing the inquiry to "*where does the trust do business*"? The analysis and facts that follow relate only to this singular narrow question, and the commissioner explicitly discounted every other fact that NRS 164.045(4) makes relevant (for instance, whether the trust owned real property in Nevada). Crucially, the commissioner never considered or concluded whether the trust had been domiciled in Nevada under NRS 164.045(4). And yet the district court relied on the commissioner's analysis and concluded that the Sommers failed to establish a jurisdictional nexus under NRS 164.045(4).[2]

Doubtless, the statutory scheme gives the district court ultimate discretion to accept or decline jurisdiction. *See* NRS 164.045(3) (stating that "the court may assume jurisdiction"). But in making that discretionary determination, the district court must apply the statutory nexus standards. "[E]ven with respect to a discretionary matter a trial court must exercise its discretion in accordance with correct legal standards." 5 C.J.S. *Appeal and Error* § 920 (2019). "[T]here should be some indication [in the record] that the court perceived the relevant salient factors when exercising its discretion." *Id.* There are critical facts—although they might not mandate jurisdiction—that are, under NRS

---

[2]The district court concluded that the probate commissioner made no errors of law in its recommendation.

SUPREME COURT
OF
NEVADA

(O) 1947A

5

164.045(4), explicitly relevant to the analysis. *Cf. Bower v. Harrah's Laughlin, Inc.*, 125 Nev. 470, 491, 215 P.3d 709, 724 (2009) (noting that, in the summary judgment context, "[t]he substantive law determines which facts are material"), *modified on other grounds by Garcia v. Prudential Ins. Co. of Am.*, 129 Nev. 15, 293 P.3d 869 (2013).[3] The district court abused its discretion by not acknowledging these critical facts.

Hembree resists this conclusion by arguing that only a trust's *current* ties can establish a nexus under NRS 164.045(4). However, we agree with the Sommers that NRS 164.010(1)'s use of the present perfect tense indicates that the "has been domiciled" inquiry is not strictly limited

---

[3]The dissent would defer to the district court, as Hembree urges. But the issue of whether a trust has been domiciled in Nevada presents a question of law. *Aboud*, 129 Nev. at 921, 314 P.3d at 945 ("We review jurisdictional issues de novo."); *cf. Fulbright & Jaworski LLP v. Eighth Judicial Dist. Court*, 131 Nev. 30, 35, 342 P.3d 997, 1001 (2015) ("This court reviews de novo a district court's determination of personal jurisdiction."). The issue in this case (at this point) is purely one of law because no facts are "disputed." *See Baker v. Eighth Judicial Dist. Court*, 116 Nev. 527, 531, 999 P.2d 1020, 1023 (2000) ("In reviewing the district court's determination that personal jurisdiction can be properly exercised, we conduct a de novo review in matters where the facts are not disputed."). Hembree is incorrect that there are disputed facts at issue. There are no disputed facts because, in reviewing the jurisdictional basis of the Sommers' petition, the district court "[was] not acting as a fact finder." *Cf. Trump v. Eighth Judicial Dist. Court*, 109 Nev. 687, 693, 857 P.2d 740, 744 (1993) (quoting *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992)). "In determining whether a *prima facie* showing [of jurisdiction] has been made, the district court" "accepts properly supported proffers of evidence by a plaintiff as true." *Id.* (quoting *Boit*, 967 F.2d at 675). "[W]hen factual disputes arise in a proceeding that challenges personal jurisdiction, those disputes must be resolved in favor of the plaintiff." *Id.* (alteration in original) (internal quotations omitted). Accordingly, the district court's conclusions on jurisdiction under NRS 164.010 are not owed deference.

to the trust's status at the point of time when the petition is filed. *See Perfect, Concise Oxford English Dictionary* 1064 (11th ed., rev. 2008) (defining "present perfect tense" as "denoting a completed action or a state or habitual action which began in the past"). The Legislature used "*has been* domiciled" and "*is* domiciled" in different subsections of NRS 164.010 (emphasis added). *Compare* NRS 164.010(1), *with* NRS 164.010(4). The fact that two of NRS 164.010(1)'s alternatives are in the present tense, while the third condition is in the present perfect tense, means *something*. Under Hembree's interpretation, that distinction would mean nothing; but "no part of a statute should be rendered meaningless," *Harris Assocs. v. Clark Cty. Sch. Dist.*, 119 Nev. 638, 642, 81 P.3d 532, 534 (2003).[4]

Hembree's interpretation not only does not account for the statute's use of the past perfect tense—"has been domiciled"—but if credited, would invite abuse. In *Aboud*, "we [did] not address the appropriate procedure for recovering trust assets inappropriately transferred to a third party" "[b]ecause the property in [that] case was not a trust asset at the time of the transfer." 129 Nev. at 922 n.4, 314 P.3d at 946 n.4. Under Hembree's interpretation, there would be no such procedure in probate. A successor trustee could defeat Nevada probate jurisdiction *in every case*—regardless of the trust's former ties to Nevada and even when Nevada beneficiaries contest the succession—simply by decamping with the

---

[4]Other authorities lend persuasive support to this interpretation. *See, e.g.*, Unif. Trust Code § 202 cmt. (Unif. Law Comm'n 2010) ("[T]he fact that the courts in a new State acquire jurisdiction under this section following a change in a trust's principal place of administration does not necessarily mean that the courts of the former principal place of administration lose jurisdiction, *particularly as to matters involving events occurring prior to the transfer*.") (emphasis added).

SUPREME COURT
OF
NEVADA

(O) 1947A

trust assets from Nevada before those affected could act. This would permit an unscrupulous trustee to forum shop by moving the trust from Nevada before another party files a petition to assume jurisdiction of the trust in Nevada. Adopting an interpretation that would encourage such a practice "is inimical to sound judicial administration." *Pac. Gas & Elec. Co. v. Fed. Power Comm'n*, 253 F.2d 536, 541 (9th Cir. 1958). As a sister court aptly explained:

> Once an express trust has been created, the trustee is subject to the jurisdiction of the court and, pursuant to that jurisdiction, he can be compelled to render to the court an account of his administration of the trust, and no act on his part, such as a dissipation or a conveyance of the trust res, can divest the court of its jurisdiction and thus render him immune from court supervision in the discharge of his fiduciary responsibility. *Any other rule would defeat the basic purpose of the principle that a trustee is always accountable for his administration of the trust property.*

*In re Bush's Tr.*, 81 N.W.2d 615, 623-24 (Minn. 1957) (emphasis added).

Hembree argues that the trust was never subject to Nevada jurisdiction due to the trust's situs-change provision and original situs in California, and the district court agreed. That conclusion was erroneous. "If a trust has not been submitted to the continuing jurisdiction of a court, and if no place of administration was fixed by the testator or settlor, any court which has jurisdiction over the parties or trust property will exercise jurisdiction." Restatement (Second) of Conflict of Laws § 267 (Am. Law Inst. 1971). While the trust provides that California law governs questions regarding the trust's validity, it also provides that questions regarding the construction or administration of the trust "agreement shall be determined by reference to the laws of the state in which the trust is then currently

being administered." It is indisputable that Arlene administered the trust in Nevada before her death. It was therefore subject to Nevada jurisdiction. The trust's situs-change provision did not affect this result because, as the parties agree, the provision did not "expressly" provide that the trust was subject to administration exclusively in California. *See* NRS 164.045(3)(b).

The district court's order is too conclusory for this court to review the legal basis for a discretionary conclusion that jurisdiction was proper in California but not Nevada; it merely stated in conclusory terms that there was no nexus. "Although this court reviews a district court's discretionary determinations deferentially, deference is not owed to legal error, or to findings so conclusory they may mask legal error." *Davis v. Ewalefo*, 131 Nev. 445, 450, 352 P.3d 1139, 1142 (2015) (citations omitted). As stated above, for the district court to properly exercise its discretion, its factual analysis must be grounded in what statutory law deems relevant to the decision. *Cf. Bower*, 125 Nev. at 491, 215 P.3d at 724. The district court's analysis was not so grounded. We therefore reverse, remand, and instruct the district court to adequately *support* a discretionary determination, one way or the other, consistent with the standards addressed in this order.

It is so ORDERED.

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Cadish

SUPREME COURT
OF
NEVADA

(O) 1947A

cc: Hon. David A. Hardy, District Judge
J. Douglas Clark, Settlement Judge
Humphrey Law PLLC
Rushforth Lee & Kiefer LLP
Washoe District Court Clerk

STIGLICH, J., with whom HARDESTY and SILVER, JJ., agree, dissenting:

This appeal presents a simple matter of statutory interpretation.[1] NRS 164.010(1) directed that the district court "shall consider the application to assume jurisdiction" of a trust where a trustee has petitioned for the district court to administer the trust. The statute provided that a trust is domiciled in Nevada if "a clear and sufficient nexus between the trust and [Nevada]" is found pursuant to NRS 164.045(4). NRS 164.010(4)(a). In turn, NRS 164.045 saliently provided that the district court "may assume jurisdiction during a proceeding conducted pursuant to NRS 164.010" over a trust where the court "determines that there is a clear and sufficient nexus between the trust and [Nevada]." NRS 164.045(3). NRS 164.045(4) set forth factors regarding a trust's connections to Nevada to consider in making this determination. As the statute provided the district court with a set of factors and stated that the court *may* assume jurisdiction, it is plain that the Legislature intended to give the district court discretion in this matter. *See State of Nev. Emps. Ass'n, Inc. v. Daines*, 108 Nev. 15, 19, 824 P.2d 276, 278 (1992) (construing "may" and "shall" in statutory interpretation); *see also* NRS 164.010(2) (stating consequences "[i]f the court grants the petition" to assume jurisdiction (emphasis added)); *Hannam v. Brown*, 114 Nev. 350, 362, 956 P.2d 794, 802 (1998) (reviewing the district court's administration of a trust for an abuse of discretion). Where the Legislature gives the district court discretion to resolve an issue,

---

[1]As in the majority's order, all references to NRS 164.010 and NRS 164.045 refer to the 2015 versions of those statutes.

 

this court should not overturn the district court's decision unless its decision is arbitrary or capricious or exceeds the bounds of reason or law. *See Skender v. Brunsonbuilt Constr. & Dev. Co.*, 122 Nev. 1430, 1435, 148 P.3d 710, 714 (2006) (stating abuse of discretion standard); *State v. Am. Bankers Ins. Co.*, 106 Nev. 880, 883, 802 P.2d 1276, 1278 (1990) (reviewing legislative grant of discretion to district court for abuse of that discretion).

The majority both disregards this discretion by upsetting a sound district court determination and rests its conclusion on a misreading of these statutes. First, the district court's conclusion here that there was no clear and sufficient nexus between the trust and Nevada rested on findings that the trustee was a California resident; the trustee relies on California counsel to administer the trust; none of the petitioners who sought to have the district court assume jurisdiction were Nevada residents; the parties conceded that the trust's situs was California when the trust was executed and that the provision to formally change situs to Nevada was never exercised; and the trust's only Nevada asset was a bank account held in a local branch office of Bank of America.[2] These findings comport with the NRS 164.045(4) factors and support concluding that the requisite nexus was not present. While the majority looks to a number of connections that

---

[2]The majority's description of this account as a "Nevada-based bank account" obscures the tenuousness of this connection to Nevada. *See, e.g., Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505, 513 (D. Md. 2011) (observing that Bank of America's corporate headquarters and principle place of business are in North Carolina); *cf.* NRS 657.058 (providing that "Nevada" when referring to a bank means either a bank organized under Nevada law or a national bank with its headquarters in Nevada).

the trust had to Nevada in the past, these historical contacts do not fall within NRS 164.045(4)'s ambit and do not warrant disturbing the district court's order. On the basis of the district court's consideration of the statutory factors and the present facts, I cannot conclude that the district court's determination was arbitrary, capricious, or beyond the bounds of reason or law.[3]

The majority's emphasis on the trust's *former* connections to Nevada lacks a basis in the statute. The majority misreads NRS 164.010(1) as governing the interpretation of "nexus" when that subsection does not govern that interpretation and other statutory provisions do. The majority reads the verb tense in the phrase referring to where a trust "has been domiciled" to direct the court to examine what nexus the trust once had to Nevada. However, the phrase does not arise in that context. In addressing "the county in which the trustee resides or conducts business, or in which the trust has been domiciled," the provision considers only which district

---

[3]The majority's jurisdictional analysis that seeks to strip the district court of its discretion is misguided because this appeal does not involve a jurisdictional matter as the majority states. The majority's reliance on *In re Aboud Inter Vivos Trust*, 129 Nev. 915, 919, 314 P.3d 941, 944 (2013), to frame this as a jurisdictional issue is mistaken. *Aboud* considered the district court's jurisdiction over certain trust assets where the district court *had assumed jurisdiction* and transfers were made, 129 Nev. at 918, 922, 314 P.3d at 943, 945-46, in light of the statutory provision that the district court has jurisdiction of a trust *if it grants the petition, see* NRS 164.010(2)(a). The jurisdictional question of law is not before this court because the petition to assume jurisdiction was not granted. Rather, the clear-and-sufficient-nexus analysis involves factual findings pursuant to NRS 164.010(4) and NRS 164.045(4). Insofar as a jurisdictional question may be present, it concerns whether the district court had jurisdiction to consider the petition—which is not at issue here—after that point, considering the merits to resolve whether to assume jurisdiction was a discretionary matter based on the factual findings.

court "shall consider the application to assume jurisdiction." The "has been domiciled" language is not related to the nexus determination. Instead, NRS 164.045(4) sets forth factors focusing on what interests a trust presently has to Nevada. The majority is correct that the different verb tenses in NRS 164.010(1) of "resides or conducts business" and "has been domiciled" mean something, but that something must consider the usage "is domiciled" in NRS 164.010(4): they mean that the district court "shall consider" a petition in a broader set of cases, NRS 164.010(1), than the narrower set where a trust "is domiciled" in Nevada based on a "clear and sufficient nexus" and the district court "may assume jurisdiction," NRS 164.010(4)(a); NRS 164.045(3). The majority then commits the mirror image of the error it opposes—not to render part of a statute meaningless, but to add words to the statute that are not there, effectively rewriting the statutory criterion whether the trust "owns" real property as whether the trust "owns [or has owned]" real property. *Cf.* NRS 164.045(4)(a). For this reason, the majority's criticism of the probate commissioner's disinterest in whether the trust used to own property in Nevada is misguided, as the statute does not look to past ownership.

Next, the majority's rule will impede the efficient administration of estates. The majority's concern that an "unscrupulous trustee" could frustrate just administration of the trust by transferring trust assets out of the jurisdiction, thus harming contesting Nevada beneficiaries, is misplaced because the Nevada beneficiaries in this hypothetical would satisfy the criteria for a clear and sufficient nexus, conferring jurisdiction in Nevada courts and impeding this potential wrongdoer. NRS 165.045(4)(c) (providing that a nexus between the trust and Nevada exists when trust beneficiaries reside in Nevada). Instead of

this hypothetical harm—which the statutory criteria stave off—the majority invites a real harm by forgoing a simple review of the trust's situses at the time of the petition in favor of a searching investigation of the historical background of each trust asset and connection. Permitting an extensive review that encompasses whether a trust ever had relevant contacts to Nevada will exhaust considerable resources and invite forum shopping to Nevada by any trust ever remotely connected to this state. The majority thus champions an interpretation that will encourage precisely the practices inimical to sound judicial administration that it seeks to oppose.[4]

Lastly, the majority's statement that the trust was subject to Nevada jurisdiction because Arlene administered the trust in Nevada before her death is mistaken. After her death, the trustee moved administration of the trust to California, such that the trust was not subject to the jurisdiction of Nevada's courts when the petition was filed, and thus neither the trust's language nor the Restatement provision cited by the majority supports the conclusion the majority proffers.

Here, the district court performed its mandatory task in considering the application and exercised its discretion in concluding that there was no clear and sufficient nexus between the trust and Nevada.

Therefore, I respectfully dissent.

---

[4]The majority's reliance on *In re Bush's Trust*, 81 N.W. 2d 615, 623-24 (Minn. 1957), confounds more than it clarifies. As raised by the majority, that case held that a trustee would be subject to an accounting notwithstanding transferring or destroying the trust corpus located in the venue. Whether Hembree failed here in his duty to account is not at issue, and *Bush's Trust* does not bear on whether a Nevada district court should assume jurisdiction based on our statutory scheme.

_____, J.
                          Stiglich

We concur:

_____, J.
Hardesty

_____, J.
Silver